In this case, Peter Knowlton appeals from the trial court's dismissal of claims against W. Vincent Rakestraw. According to the allegations in the complaint and amended complaints filed in the trial court, Rakestraw is an attorney and was the trustee for a trust established by a "memorandum of understanding" entered into by Peter Knowlton and Peter's father, Austin Knowlton, on June 4, 1983, and/or June 22, 1983. The complaints allege that per these agreements, Austin agreed to pay certain debts accumulated by Peter, including a debt to U.S.F.G. and a debt to the Internal Revenue Service (IRS). As part of the agreements, Peter and his wife, Norma, deeded property Norma owned in Oakwood, Ohio, to Mr. Rakestraw, as trustee. Rakestraw was to sell the property and apply the proceeds to various debts that were included on a schedule attached to the agreements. Austin was then to pay any remaining indebtedness, including the IRS and U.S.F.G. debts.
As part of the transaction, Austin also agreed to purchase residential property in Springfield, Ohio, and to allow Peter to live there, rent-free, for as long as Peter resided and practiced law in Springfield. Further, Austin agreed to pay taxes and insurance on the real estate. And finally, Austin agreed to pay for remodeling of Peter's office premises, to pay Peter's office rent for a maximum of six years, and to pay Peter a retainer of $30,000 per year for three years for legal services rendered. The retainer was to be paid to James Stolly, who was also a trustee, and Stolly was to pay statements submitted by Peter, up to $30,000 per year, including any tax.
Apparently, the U.S.F.G. and IRS debts were never paid, either with trust proceeds generated from the sale of the Oakwood property, or by Austin. According to the complaints, Peter told his father and Rakestraw on a number of occasions that the debts had not been cleared of record and that his credit was being impaired. Specifically, U.S.F.G. filed a judgment in 1982 that was not cleared and that was the subject of a subsequent proceeding brought in 1996 by U.S.F.G.'s successor. Peter was told on a number of occasions that the debt had been paid, and at least as of November, 1996, in the revivor action, Austin maintained in testimony that he had paid the U.S.F.G. debt. However, the court apparently did not believe this, and allowed the debt to be revived in 1997.
The complaints filed by Peter in the present case also say that Peter was told, beginning in 1986, and continuing up until 1997, that if Peter would sign a false affidavit, Austin would help Peter with problems, including paying the already existing obligations from the 1983 agreements, i.e., the IRS and U.S.F.G. debts. The affidavit itself was for use in a pending divorce action between Austin and Austin's ex-wife, Phyllis Coulton Knowlton, who was also Peter's mother. Although a divorce had been granted in 1971, property disputes between Austin and Phyllis were still unresolved. In particular, the affidavit related to Phyllis' alleged unauthorized removal of various items of property from a residence known as "the stone residence located on the South Section" of Emerald Farms. Peter refused to sign any affidavit to this effect, because he had not seen his mother remove any property. Supposedly, Peter told both Rakestraw and Austin that their attempts to have him sign the affidavit amounted to suborning perjury.
Rakestraw was implicated in these activities, in that he was alleged to have presented false affidavits to Peter, knowing that Peter and his family were in great financial distress and had suffered damage to their credit because of the unpaid IRS and U.S.F.G. debts. The complaints also contain allegations to the effect that Rakestraw and Austin improperly took or converted the Oakwood property. In the prayer for relief, one request was that Rakestraw be ordered to transfer residence property to Peter. However, other requests for relief were also made, including requests for damages for withholding property and for attempting to extort a false affidavit before settling property.
The complaint against Austin Knowlton and Rakestraw was filed on January 25, 1997, and the first amended complaint was filed on February 28, 1997. Subsequently, on March 7, 1997, Rakestraw filed a one page motion to dismiss. As an initial point, Rakestraw claimed that Peter's suit was being brought as a breach of contract action and that Rakestraw had served as attorney for Austin Knowlton during the negotiation of the contract. According to Rakestraw, the current suit was an attempt to compel Rakestraw to reveal privileged communications, and answering the complaint would "violate the attorney-client privilege." Rakestraw further contended that the complaint did not state a claim under Civ. R. 12(b)(6) because the complaint asked that Rakestraw be ordered to transfer residence property to Peter Knowlton. However, Rakestraw claimed he had no property belonging to Peter Knowlton. None of the factual matters in the motion to dismiss were authenticated by proper affidavits or otherwise.
Peter Knowlton did not file a response to the motion to dismiss. On March 25, 1997, the motion to dismiss was sustained by the trial court. The court did not mention any reasons for its decision, but simply noted in a brief entry that the complaint was dismissed for failing to state a claim upon which relief could be granted. Before the motion was granted, however, Peter had filed a motion for temporary restraining order and preliminary injunction. According to this motion, Rakestraw had threatened to file a deed transferring the Springfield property in which Peter lived, to Peter and his wife. At the time of Rakestraw's threats, the property was held by Central Holding Corporation, and transferring the property to Peter would mean that the creditors who were not paid under the 1983 agreement (U.S.F. G. and the IRS), would be able to seize the property. According to the motion, Rakestraw said he would take this action unless Peter dismissed the present case and also signed an order in another case in Delaware County involving Peter and Austin Knowlton.
A partial preliminary injunction hearing was held on April 24, 1997. Before the hearing, on April 11, 1997, Peter filed a motion asking the court to reconsider dismissing Rakestraw. In this motion, as well as others, Peter mentioned that his failure to respond earlier was due to illness. A second amended complaint was also filed on April 24, 1997, with essentially the same allegations as the first two complaints. However, the prayer for relief was amended to include a claim against Rakestraw for damages for pain and suffering in connection with the false affidavit. At the preliminary injunction hearing, Peter also asked the court to reconsider dismissing Rakestraw, but the court refused. The court did continue the temporary restraining order, preventing the Springfield property from being conveyed to Peter and his wife during the pendency of the case. Subsequently, on December 2, 1997, the court filed a judgment entry affirming Rakestraw's dismissal, but this time added Civ. R. 54(B) language. Peter has appealed from the December judgment entry, raising the following single assignment of error:
I. The trial court erred in finding that no claim is presented upon which relief could be granted in regard to defendant W. Vincent Rakestraw and in thus sustaining the motion of this defendant to be dismissed from the case.
After reviewing the allegations in the complaint and applying the traditional Civ. R. 12(b)(6) analysis, we find that the single assignment of error has merit. Accordingly, this case is reversed and remanded to the trial court for further proceedings. A brief discussion of our decision follows.
 I.
In Ohio, the law is well-established that:
 [i]n order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.
O'Brien v. University Community Tenants Union, Inc. (1975),42 Ohio St.2d 242 (citation omitted). Thus, under Civ. R. 12(b)(6):
 a complaint may be dismissed only if the court (1) accepts all factual allegations as true, (2) draws all reasonable inferences in favor of the nonmoving party, and (3) still concludes beyond doubt from the complaint that no provable set of facts warrants relief.
State ex rel. Midwest Pride IV, Inc. v. Pontious (1996),75 Ohio St.3d 565, 570. Civ. R. 12 also stresses that if matters outside the pleading are presented, the court may dispose of the motion as provided in Civ. R. 56, but may consider only such matters outside the pleadings as are specifically enumerated in Civ. R. 56. As we noted previously, some of the statements in Rakestraw's motion to dismiss presented matters outside the pleadings and were not in the proper Rule 56 format. Consequently, the trial court could not properly have considered anything other than the allegations in the complaint. In particular, the court could not have considered Rakestraw's claim that he had no "residence property" in his possession belonging to Peter.
On appeal, Peter contends that he has stated claims against Rakestraw: 1) as a trustee; 2) as receiver of the deed to the Oakwood property under the memorandum of understanding; 3) for Rakestraw's actions regarding the Springfield property purchased as a result of the memorandum of understanding; 4) for Rakestraw's failure to obtain and file satisfaction of liens and debts; and 5) for actions taken in connection with the false affidavit. After reviewing the complaint and construing the allegations as true, we agree that valid claims have been stated against Rakestraw.
Initially, we note that a trust was established under the memorandum of understanding for the benefit of Peter Knowlton. Two persons, James Stolly and W. Vincent Rakestraw, signed the memorandum of understanding as "trustees." Property belonging to Peter Knowlton and his wife was conveyed to Rakestraw, who was then given certain duties to perform in connection with the trust. Contrary to Rakestraw's contention, he is not insulated from potential liability because he may have represented Austin Knowlton during negotiations preceding the adoption of the trust agreement. As we read the allegations in the complaint, the claims are not solely for breach of contract, but are also for breach of fiduciary duty, conversion, fraud, and malpractice. In this context, we note that:
 [a] person who occupies a fiduciary relationship to another acts as an agent to that person and owes the utmost loyalty and honesty to the principal. * * * "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."
Tibbs v. Kendrick (1994), 93 Ohio App.3d 35, 43 (citations omitted). An attorney who acts as a trustee may certainly be sued for damages resulting from breach of fiduciary duty, malpractice, conversion, and fraud in administering the trust. See, e.g., Marzocco v. Titus (1995), 106 Ohio App.3d 112, andDayton Bar Assn. v. Marzocco (1997), 79 Ohio St.3d 186, 187.
The allegations in the complaints raise issues about whether Rakestraw acted in accordance with his fiduciary duty as a trustee. In this regard, we note that if Rakestraw represented Austin Knowlton in negotiations, Rakestraw's assumption of the dual role of trustee inherently involved the potential for conflict. Although we express no opinion on the merits and note that the complaints could have been more artfully worded, we believe sufficient allegations have been made to withstand a Civ. R. 12(b)(6) motion.
As a final point, we note that the prayer for relief was not confined simply to a request that Rakestraw convey property, but also included damages. Again, while the complaints could have been better worded, the claim against Rakestraw is clearly not just for conveyance of property. Besides the matters we have already mentioned, the complaints contain numerous references to malice. Punitive and compensatory damages are permitted even in contract cases where the elements of the tort of fraud and of malice are shown. See, e.g., Stern Enterprisesv. Plaza Theaters I, II, Inc. (1995), 105 Ohio App.3d 601,606.
Based on the preceding discussion, the single assignment of error is sustained. Accordingly, the judgment dismissing W. Vincent Rakestraw as a party is reversed and claims against Rakestraw are remanded for further proceedings.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Peter M. Knowlton W. Vincent Rakestraw Hon. Gerald F. Lorig