**HONEY CREEK REGULAR BAPTIST CHURCH, Plaintiff-Appellee, v. WILSON, Defendant-Appellant.**

Ohio Apppeals, Second District, Champaign County.

No. 121.  Decided April 1, 1950.

George M. Winwood, III, Springfield, E. Clark Morrow, Newark, Donald M. Gibbs, Urbana, for plaintiff-appellee.

Wm. T. Gillie, Urbana, Danial E. Falkner, Akron, for defendant-appellant.

## OPINION

By THE COURT:

This is an appeal on questions of law and fact from an injunction granted by the Common Pleas Court against the defendant. The type of appeal is such that we are required to hear and determine the issues drawn between the parties as though the case had originated in this court. Thus, all the responsibility attending the obligation to weigh and determine the facts and to pronounce the law controlling devolves upon this court. It is a most unpleasant duty because it involves disputes between members of a congregation of the same church.

It is pleaded in the amended petition and admitted that the plaintiff is a corporation and, it may be added, not for profit. It is the successor to a body which entered into a Covenant as Baptists in the year 1813 and has almost continuously carried on as a religious denomination without serious difference among its members until the recent controversy culminating in the suit under consideration.

The original petition verified by the Trustees of Honey Creek Baptist Church was filed on September 22, 1948, and a temporary restraining order issued. On October 25, 1948, an amended petition was filed in which the plaintiff was styled as The Honey Creek Regular Baptist Church, a corporation. New summons was issued and served on the amended petition.

The amended petition, independent of the prayer, consists of sixteen paragraphs. The answer to the amended petition in conjunction with statement of counsel for defendant at

the trial of the cause admits the first, second, third, fourth, fifth, sixth, seventh, ninth and eleventh paragraphs of the amended petition. By the second, third and fourth defenses of the answer, the defendant pleads facts in denial of paragraphs eight, ten, twelve, thirteen, fourteen, fifteen and sixteen of the amended petition and by the first defense avers that it does not state a cause of action against the defendant.

It is averred and admitted that the plaintiff is a corporation incorporated on May 5, 1866, "for the express object of the general diffusion of the Gospel of Jesus Christ as taught in the Bible in manner and form of the Regular Baptist Church as set forth in their Articles of faith and practice." The Articles of Incorporation of said plaintiff, provide in part that "the Trustees of said plaintiff shall make all contracts, shall prosecute and defend suits, shall hold, enjoy, dispose of and convey all property real or personal which may be acquired by purchase, donation or otherwise," that "the plaintiff acquired title to certain real estate and thereafter constructed a church on said real estate and is now the owner of said real estate and also later acquired certain other real estate, now used as a parsonage, said real estate being acquired for plaintiff in the name of the Board of Trustees of Upper Honey Creek Church Association and now is the owner of said real estate." "Ever since its incorporation, plaintiff church has been a member of and affiliated with the Ohio Baptist Convention, and the Mad River Baptist Association, both being recognized denominational organizations of Regular Baptist Churches, and that the Northern Baptist Convention, another recognized denominational organization of Regular Baptist Churches, was organized in 1907 and since then plaintiff has been a cooperating church of the said Northern Baptist Convention." "That prior to the time the defendant became the pastor of plaintiff church, all its pastors were Regular Baptist ministers, and adhered to the faith, practices, and discipline of the church and led plaintiff church in harmony with the organizations, societies, and agencies of the Regular Baptist denomination." "That the defendant was never trained as a Regular Baptist minister and received his training in an Independent Baptist School."

The denials are that the four persons who signed the affidavit to the amended petition individually but who are named as Trustees of the plaintiff corporation "are the duly elected and acting Trustees of plaintiff, having been elected on October 8, 1947, and their terms of office have not expired." That the defendant "is not now or never has been a Regular Baptist minister, which fact was unknown to plaintiff, its

officers and congregation" at the time defendant was called to the pastorate. That the "fundamental doctrines, practices and forms of the Independent Baptist Church are foreign to and widely divergent from those of the Regular Baptist Church." That "the defendant in accepting the call as pastor of plaintiff church, knew that plaintiff church was a Regular Baptist Church and knew the fundamental differences between Regular Baptist Churches and his own faith and belief which was and is that of the Independent Baptist Churches." That when the plaintiff accepted the call to the plaintiff church "it was his intention and plan, and is now his intention and plan, to effect a change in the basic denomination of such church, and to make of it an Independent Baptist Church, contrary to the dedicated purposes of plaintiff church." That "one of the requirements of church membership in plaintiff church, as in all Regular Baptist Churches, is the receiving of the right hand of fellowship and that defendant in receiving new members in the plaintiff church has not complied with the aforesaid requirement and by reason of that fact said persons are not members of plaintiff church." That "defendant, by and with the aid and assistance of said non-member persons, has attempted and is attempting to effect a change in the basic denomination of plaintiff church by making of it an Independent Baptist Church and is attempting to remove plaintiff church from its association and affiliation with Regular Baptist organizations, to-wit; the Northern Baptist Convention, the Ohio Baptist Convention and the Mad River Baptist Association; has attempted and is attempting to take possession and control of the church property of the plaintiff church" and in other ways set forth "is attempting to divert the use of the property of plaintiff church to those persons who do not adhere and hold to the belief, religious principles, doctrines and articles of faith of the Regular Baptist Church."

The prayer is for an injunction against the defendant which was granted in the language thereof and perpetually enjoined the defendant from interfering with, in any manner whatsoever, directly or indirectly * * * the real estate of the plaintiff, including the church building and parsonage, from using the name "Honey Creek Baptist Church," from exercising any of the rights and franchises conferred upon the plaintiff by its articles of incorporation, except insofar as they may regularly become members of the plaintiff church, that a temporary restraining order be granted enjoining the defendant from entering upon the church building and the premises upon which the same is situated, from acting as pastor of plaintiff church in any manner whatsoever.

Upon the issues drawn the burden of proof is upon the plaintiff and to justify the granting of the injunctive relief sought the plaintiff's right to such relief must clearly and definitely appear. **Spangler v. Cleveland 43 Oh St 526.** It is said that no rule in equity is better settled than this. Foley v. Peters 5 O. Dec. Rep. 517.

It is the claim of the plaintiff that it has the right, even though it appears that it is representative of a minority group, to the relief sought because the defendant and his followers are attempting to preach and teach doctrine in conflict with and contrary to the Articles of Faith and Practice of the Regular Baptist Church. This right of a minority group has been supported in cases cited by plaintiff. First Regular Church, Independent Pa. v. Allison, et al, 304 Pa. 1, 154 A, 913, and others. We will hereafter discuss the factual development in these cases.

The action is not instituted by or on behalf of a minority group, as such, but by the Trustees in the name of the corporation. Passing this question for the time being and going immediately to the essentials of proof, before this court can find that the acts of the defendant constitute a departure from the Articles of faith and practice of the plaintiff such articles should be made available. The only evidence of Articles of faith is found in the Covenant as recited in the minutes of the church of January 13, 1813, continued and restated in 1866 just before the Articles of Incorporation were prepared and finally carried in language almost identical in the printed Covenant, Beliefs and Rules of Practice, defendant's Exhibit E. If the Articles of Faith of the Regular Baptist Church differ in any particular from those embodied in the Covenant, Beliefs and Rules of Practice of plaintiff, heretofore mentioned, it does not appear from this record. We, therefore, assume that when the Article of Incorporation says "5th,— that the object of this church the general diffusion of the Gospel of Jesus Christ as taught in the Bible in manner and form of the Regular Baptist Church as set forth in their articles of faith and practice, it refers to the articles of faith and practice as set forth in the Covenants of plaintiff to which reference heretofore has been made. In any event, it is safe to conclude that if there is another it is not in conflict with those which are before us. Nor, can we make differentiation between the articles of faith and rules of practice of the Regular Baptist Church and the Independent Baptist Church because we do not have the articles and rules of the latter church, and insufficient testimony to establish of what they consist.

Another material question which is presented is to what extent, if at all, it appears from the record that the defendant is violating any of the doctrine of the Regular Baptist Church in the particulars charged.

It is asserted that in contravention of many years of uniform practice, the defendant and his followers have withdrawn the plaintiff church from affiliation with the Ohio Baptist Convention, Mad River Association and the Northern Baptist Convention recognized denominational organizations of Regular Baptist Churches. If, as a part of the fundamental organization of the church, association with one or more of these groups is requisite then there is basis for the claim that the defendant is attempting to change the practices of the plaintiff church.

The clearest fact projected from this record is that the Regular Baptist Church is an independent, self-governing body; that as to all matters not specifically controlled by charter, rules, or law, the congregation or members of the church is the supreme controlling body. It is not a federation and is not dependent upon or inter-dependent with any other religious body or association as to its governmental control or scriptuural interpretation.

Rev. J. W. Hooper, Minister of Calvary Baptist Church, Springfield, Ohio and pastor of the plaintiff church for seven years, 1934 to 1940, said that his church was affiliated with the Northern Baptist Convention and the Ohio Baptist Convention and the Mad River Association, that the purpose of the church affiliating with these conventions and associations was to strengthen its church, its fellowship, its missionary work, support schools and other projects of the Northern Baptist Convention. Upon the Inquiry,

Q. "You understand the beliefs of the Northern Baptist people, do you, Rev. Hooper"?

This answer was made. "Well, I think I do. As was said here this morning, there are fifty-seven varieties and it is pretty hard to understand them all. As an individual, generally speaking, that is, the characteristic of the Northern Baptist Convention and all the Baptists down through the history, has been the fact that every man is given the privilege of interpreting the New Testament according to the dictates of his own heart. The Northern Baptists have been embracive and have lived up to that age-old tradition that each man is an anatomy that has to answer to God himself, both as a minister and as a layman."

Q. "Is there any creed or statement of faith that the Northern Baptist Convention insists that the individual or

the individual church adopt before they can become affiliated with that group?"

A. "So far as I know I have never seen one that a church must subscribe to. The only thing I know that a church must necessarily subscribe to is to the projects, etc."

He says upon cross-examination that he would not be able to determine the difference between the so called Independent and the Regular Baptist Churches, but, that as near as he can understand, the difference is in the interpretation of the scripture. They both take the New Testament as their rule and guide but that they differ widely as to their interpretation of the New Testament. He says there is nothing in the regulations that would prevent an independent church group from becoming a member of the convention if they were willing to subscribe to the purposes and aims of the association. He says of the plaintiff church "It was absolutely an autonomic body of its own."

Dr. Paul Judson Morris, another clergyman, Executive Secretary of the Ohio Baptist Convention and Director of Promotion for the Northern Baptist Convention says that a Baptist Church is organized on the congregational plan with the authority resting in the congregation but that for matters of fellowship and particularly for the propagation of the Gospel the churches bind themselves voluntarily together in associations, and conventions. Dr. Morris said that one of the distinctive things of Northern Baptists or of Baptists has been that there has been no accepted statement of creed as binding upon churches, that the Regular Baptist Church member exercises his own freedom of mind in interpretating the Bible.

The witness makes differentiation between the Independent Baptist and the Northern Baptist. Whether or not he uses Northern Baptist synonymously with Regular Baptist is not stated but it may be assumed that he does although he stresses, as do practically all of the witnesses that testify on the subject, the diversity of interpretation of the New Testament. He gives as his opinion that the Independent Baptist insists upon its members accepting a more restricted statement of faith. He illustrates by mentioning one church that took such a statement as a prerequisite to membership. Having fully gone into this matter, on cross-examination, he says there is nothing in the regulations which would prevent an Independent Baptist Church from becoming a member of such associations provided only that they agreed to support missionaries and follow the rules of the association but that any difference in regard to creed would not preclude member-

ship. Rev. H. C. Marland testified substantially as the other ministers for the plaintiff and he and all of them emphasized that the plaintiff church is a congregational organization.

We cannot conceive of a doctrine which would accord to its pastor, whose duty it is to affiord spiritual leadership to his congregation, wider latitudes of exposition of his belief than the tenets of faith of the plaintiff church. In the light of this fact it is most significant that nothing whatever appears of any satement of the defendant, oral or written, purporting to present any doctrine of the Independent Church in conflict with the belief of the plaintiff or to incorporate it in the articles of faith, rules of practice or general program of the plaintiff church unless found in the Resolution and particularly No. 1, which we discuss.

We have examined the language of Resolution One passed by those who voted upon it on the evening of September 15, 1948. It sets forth much of the subject matter which is the basis of plaintiff's claim for injunctive relief. The language imputed to the defendant upon the presentation and discussion of this resolution was inordinate, vituperative and unfortunate and some of the language of the resolution would have been better omitted. But the test is not whether it is couched in appropriate language but the ultimate effect of the resolution upon the dogmatic structure of the articles of faith and rules of practice of the plaintiff church. Its purpose is to resolve that the plaintiff church will not affiliate with the three associations mentioned. Of course, it provided for a change in the relation of the plaintiff church to these organizations which had existed uninterruptedly over a long period of time. But, in our judgment, it did not rise to the dignity of a statement of policy which would require the conclusion that the defendant or those who supported the resolution had violated any article of faith or basic rule of practice which it was enjoined upon them as members of the church to observe. The subject matter of the resolution asserts and re-asserts the steadfastness of the faith of the plaintiff and the departure from the faith of the conventions, but only by conclusion and not specification. It stresses the purpose of the plaintiff to maintain the doctrine of the plaintiff church. Many of the "whereas" clauses in the resolution are most general in terms but when examined to determine if any of them is in conflict with any article of faith or rule of the plaintiff church which is brought to our attention we find no such conflict. Unless and until this be determined in favor of the plaintiff it could not maintain its suit even upon its own theory.

Other questions require that certain events be considered in chronological order. The defendant was called as pastor by vote of the plaintiff congregation in October, 1947. It reasonably appears that some of the officers of the church knew, and others could have known, that the defendant was a member of Temple Baptist Church, that he was not trained as a Regular Baptist minister but received his training in an Independent Baptist School. This in its-self, according to plaintiff's witnesses, would not preclude the members of plaintiff church employing him as its pastor.

It does not appear, except as gleaned from the membership book, how many persons were members of the plaintiff church at the time that the defendant took up his work there and how many were taken into membership during his pastorate. By observation of the list of members it would appear that there were a few more members of the church prior to defendants coming than were accepted by him during his tenure of service.

Prior to September 15, 1948, the members were notified of a meeting of the congregation. The object of the meeting, if and as stated in the notice, does not appear because we have neither the notice nor a copy thereof. It was sent out by Powell M. May, Assistant Moderator of the church. At this meeting in attendance were members of the congregation who had been received into the church before and after the coming of the defendant. Also present were a number of visitors who, presumably, had been invited and who came to counsel fellowship and accord between the groups and particularly to urge the inadvisability of the withdrawal of the church from affiliation with the Conventions and the Mad River Association. At this meeting the defendant who, it is stated and not denied, was the Moderator presided instead of Assistant Moderator May, who had called the meeting. It is asserted that this was an irregularity but whether it was or not we are not in position to say because there is nothing before us which would enable us to decide this question. It would be presumed that in the absence of such information the Moderator would have the prior right to preside at the meeting, if he cared to do so.

On September 18, 1948, a notice signed by defendant and three members stated as Deacons was sent to the members of a meeting of the church to be held on the evening of September 22, on the church grounds "for the purpose of excluding Trustees of the church" and for other business. The minutes of this meeting, plaintiff's Exhibit four recite, among other things, the dismissal of the four Trustees who signed the petition and the amended petition in this cause and the

election of new Trustees succeeding them. The minutes further recite that the motions naming these parties to their respective offices were carried 50 to 0. As of October 6, 1948, was introduced what purports to be the minutes of a business meeting electing Lena Littlejohn church clerk and naming trustees and other officers.

Defendant's Exhibit C of date November 10, 1948, is a motion certified to be correct by "Lena Littlejohn, Clerk" of the Honey Creek Baptist Church wherein the membership directs the persons who signed the petition and amended petition, as Trustees, "to withdraw any and all actions that they may be maintaining in the name of the church and to cease to represent to the court or others that they are acting as such trustees."

Under date of November 23, 1948, minutes of a meeting appear in the record book of the church over the signature of Georgia L. Furrow, Clerk, who in the business session of October 6th had been succeeded by Lena Littlejohn. This record takes no cognizance of any meeting between July 7, 1948 and November 23, 1948 and ignores the interim meetings which we have before mentioned.

Although the plaintiff insists that it does not rely upon the necessity of establishing the dismissal by the plaintiff of the defendant as its pastor, asserts that the minutes of November 23, 1948, succeeding the filing of the petitions, are proof of his dismissal. The language of pertinent subject matter of the minutes is "5—A year (has/is) passed and it is time for a vote of confidence for a pastor." "A motion was made that we take that vote and vote "yes" or "no" on Bill Wilson by ballot." "Sec. Carried. Vote 33 against him, 0 for him." Manifestly, this was not a dismissal of the pastor although it would have been the basis of a motion to that effect. If such motion had carried and the minutes are a true record then plaintiff would have had the right to maintain a legal action against the defendant.

If those who voted on the motion, defendant's Exhibit C were members of the church and thus entitled to vote, then clearly it was a mandate to the trustees to withdraw this suit, in the face of which they should not have proceeded and no court should act upon the petitions which they filed. Independent, however, of the effect of this instruction, it is our judgment that the trustees had no authority to institute this action by virtue of their offices.

The Articles of Incorporation recite 4th Paragraph that "it shall be the duty of the Trustees to make all contracts, to prosecute and defend suits, etc.". This does not mean that the Trustees, upon their own initiative, shall enter into all

contracts or prosecute and defend suits but only if, and when, the members of the church had first directed them to do so. This is made plain by the following language of paragraph 4, "for the purpose of carrying out the intention of the church as a majority of the members of the same may determine and order." It would not be urged on this record that the trustees could select and contract for a pastor of the church, although, if a contract was required as a result of such selection made by a majority of its members, it would be the obligation of the trustees to enter into such contract in the name of the church. Likewise, the duty of the Trustees to institute a suit begins only after the church by the requisite vote of its members has indicated an intention and purpose that such action shall be begun. There is nothing in this record which authorizes the trustees to prosecute this action in the name of the corporation.

Who were members of the plaintiff church and who had the right to vote upon the motions and resolutions?

It being alleged and admitted that the plaintiff is a body corporate, manifestly not for profit, it is controlled as to its members and their right to vote by the provisions of §8623-104 GC to the effect that, unless otherwise provided by law, the articles or regulations, every member shall be entitled to one vote.

The record is silent as to the specific procedure essential to membership in the plaintiff church. The amended petition asserts that as a prerequisite to membership it is necessary that candidates be received by the extending of the right hand of fellowship. No doubt this procedure was followed before the coming of the defendant as pastor and that it had not been generally observed since that time. No one of the witnesses for the plaintiff, who qualified as experts in the field of the doctrine and practices of the Baptist Church, said that the extending of the right hand of fellowship was an essential and integral part of reception of a person into membership of the church. It further appears that prior to the meeting of September 15, 1948, the membership, before and after the coming of the defendant voted without objection or differentiation on matters that regularly came before the congregation for decision. It does not appear that plaintiff's claim was urged at any time by any member of the church until the institution of the petition in this case. There is nothing in the Articles of Faith or Rules of Practice of the church respecting the necessity of this form as a part of the membership ritual. Inasmuch as the burden of establishing this claim is upon the plaintiff we cannot find that the

procedure which it suggests was a prerequisite to membership by any written or well recognized rule of the church.

It is asserted that the defendant has planned to and has taken over the Regular Baptist Church and that his followers have like intent and purpose. The only proof which reflects at all upon this claim is the fact that a majority of those present at meetings of· the church voted as they did and in favor of the resolutions of September 15, 1948, which had been prepared and sponsored by the defendant. It is said that the members who were enrolled before the coming of the defendant did not vote on the resolutions but it is testified and not denied that eight of such members did vote with the majority and the number of members who did not vote, or who opposed the resolution, does not appear. So that, we cannot, as a matter of simple mathmetics, say that the majority in favor of the resolutions was made up of members who had been admitted into the church after the coming of the defendant. Nor, can we say without some testimony, which is not forth-coming, as to the belief of those who supported the action of the majority in the meetings of September 15, 22 and October 6, that their votes were based upon any opposition to the Articles of Faith or Rules of Practice of the Regular Baptist Church into which they had been admitted as members.

The membership of the church being established, the procedure to discharge the defendant if the church desired to do so was apparent and should have been followed. If and when such action was taken the plaintiff had a clear legal right to eject the defendant from the parsonage and if any further equitable relief was necessary to prevent his attempt to carry on as pastor it could have been secured by appropriate action.

We have carefully examined the cases cited by appellee and, although without exception, we agree with the judgments and the legal principles there followed, the facts are so different from this case as to preclude the acceptance of them to control the decision here.

First Regular Baptist Church of Indiana, Pa. v. Allison, 304 Pa. 1; 154 A. 913—The gist of this judgment is found in the syllabi;

2—"Action of majority of Baptist congregation held subject to control of court of equity so far as property rights are concerned, if it intends to do that which is essentially non-baptistic.

4—"Deed of trust to church property or charter for church

owning property determines rights of members of church, regardless of antagonism of majority."

The majority membership adopted a new confession of faith which the Chancellor and the courts found to be at variance with the charter of the parent church.

**Kemp, et al v. Lentz, et al, 46 Abs 28,** is a decision by this court. There one of the groups of the original church incorporated a new church organization affiliated with another denomination and sought to transfer title to the church property to that denomination. We held that such a transfer could not be made so long as one member of the original church objected to such transfer. The defendant church had withdrawn its support from certain state and national conventions and from a college and seminary which theretofore it had supported. It pledged assistance to another seminary. As a result, it was not recognized by the state and national conferences. All this was urged as a departure from its creed and churchly practices. We held that a church which upon its establishment provided that it should be congregationally controlled did not adopt ecclesiastical authority superior to the congregational control by sending delegates to state and national conventions, and by supporting an educational institution at the request of the state organization.

The syllabus in **Bakos, et al, v. Takach et al, 14 Oh Ap 370,** clearly differentiates the facts from the instant case. The church held real property by way of trust for the use and promotion of a certain specific religious organization. An attempt was made to change the organization so as to effect an avowed change of denominational relations, resulting in the turning over of the church property to another separate distinct denomination and working an abandonment of the original purpose of the society. The court enjoined such action.

Nothing that the defendant did in this case nor the resolution which the majority adopted, in our judgment, can be found to be a departure from the article of incorporation or Articles of Faith of the Regular Baptist Church or to constitute practice which is in conflict with any of the Rules of Practice of the plaintiff church.

We are satisfied that the plaintiff had not the right to maintain this suit and that it has failed to produce requisite proof to support any equitable intervention by this court in its behalf.

The judgment will be for the defendant and the petition and amended petition will be dismissed.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.