**BHATTI et al., Appellees,**

v.

**SINGH et al., Appellants.**

[Cite as *Bhatti v. Singh,* 148 Ohio App.3d 386, 2002-Ohio-3348.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2001–09–215.

Decided June 28, 2002.

Mann & Mann, LLC, and David S. Mann, for appellees.

Newman & Meeds Co., L.P.A., and Robert B. Newman, for appellants.

WILLIAM W. YOUNG, Judge.

{¶ 1}  Defendants-appellants, Jasbir Singh, Inderjet Singh, Sohan Singh Bilkhu, Naunder, Shashpal and Surjit Singh and the Guru Nanak Society Gurudwara, appeal from the decision of the Butler County Common Pleas Court, finding that appellants had improperly incorporated their religious society.

{¶ 2}  Appellees, Pyrah Singh Bhatti, Santokh S. and Pushpinder Singh Bhatti, claim that they were members of the Guru Nanak Society ("Society"). Appellees filed a complaint alleging that appellants violated their authority and power as trustees and executive committee members respectively by failing to follow the provisions of the Society's constitution and by illegally and improperly creating an Ohio nonprofit corporation, the Guru Nanak Society Gurudwara ("Corporation").

{¶ 3} The trial court succinctly and orderly related the facts of the case in its decision as follows:

{¶ 4} "[A]ll [parties] practice the Sikh religion. The Sikh religion was founded by Guru Nanak (1469–1539) in the form of the ten Gurus in India. Nanak's thought was shaped under the influence of the Hindu Sant tradition of Northern India. The idealistic approach of Sikhism is that it recognizes the existence of the same heavenly light in every human being, rich or poor, high or low, irrespective of caste, creed, color, race, sex, religion or nationality. Based upon that belief, the doors of the Sikh temple (Gurudwara) are open for all in the world without prejudice or social discrimination. Under Sikh belief, every person in this world has an equal right to enter and join the services in the Gurudwara. A discussion of the Sikh religion is relevant within the context of this decision because it is the driving force behind the organization under which the [parties] practice their religion.

{¶ 5} "The Guru Nanak Society was first organized in southwestern Ohio in the 1970's for the purpose of practicing the Sikh religion. In May of 1985, a formal constitution was adopted by the Guru Nanak Society listing its principal place of business to be in the city of Cincinnati, Hamilton County, Ohio. The stated purpose in the constitution was to propagate the teachings of Guru Nanak and the Sikh religion and to promote the religious, educational and cultural aspects of the Sikh religion. A final objective was to establish and maintain Sikh centers in the tri-state area.

{¶ 6} "Article Three of the constitution defined general memberships. It states that 'Any person irrespective of caste, creed, color, race or sex who subscribes to the objectives of the organization may become a member.' That section also provides that the annual membership fee shall be one dollar per person. Article Four defines the voting membership. Article Four (A) states, 'All members of at least three months standing and above the age of 18 shall be eligible to vote. All voting members shall constitute the General Body.' Article Five (A) of the constitution states, 'The General Body alone, as a primary organ of the organization, shall have the power to amend or revise this constitution and the by-laws for the management of the affairs of the organization.' Article Six (A) deals with the organization of the executive committee. It states, 'There shall be an executive committee consisting of at least five (5) and not more than seven (7) elected from the General Body membership.' This section further provides that any voting member of the organization can seek election to the executive committee. This article further provides that the executive committee has the authority to perform functions on behalf of the organization in accordance with the constitution and bylaws framed by the General Body from time to time.

{¶ 7} "Article Twelve provides that, 'This constitution can be amended by a two-thirds (⅔) majority vote of the members either present at a General Body meeting or by votes submitted by and [sic] other means.' The constitution became the working frame work under which the Guru Nanak Society operated from its adoption through the present.

{¶ 8} "In 1993, the Sikh Temple of Greater Cincinnati came into existence through the filing of tax exempt forms through the state and local government. That organization co-existed at the same time as the Guru Nanak Society and both organizations continue to practice the Sikh religion. Starting in approximately 1993, an effort was made to build a gurudwara by members of the Sikh community. In March of 1994, property was deeded from a member of the Sikh community to the Guru Nanak Society to be used for the construction of a gurudwara.

{¶ 9} "Contemporaneously with the attempt to build the gurudwara there was also a significant fundraising effort going forward to attempt to obtain the funds for the construction of the temple. In addition, several efforts were underway by members of the Guru Nanak Society to amend the 1985 constitution and bylaws. Simultaneous to that, there were also discussions about formally incorporating the Guru Nanak Society under the laws of the state of Ohio.

{¶ 10} "In June of 1996 additional land was purchased for the construction of the gurudwara. Subsequently, a mortgage was filed in April of 1988 financing the construction of the temple on the new land. As part of the fundraising efforts, the fundraisers promised that any member who made a donation of five thousand dollars or more would become a permanent member of the board of trustees.

{¶ 11} "As previously mentioned, efforts were going on at the same time to incorporate the Guru Nanak Society to a non-profit corporation under the law of the State of Ohio. An attempt was made to file the Articles of Incorporation during this time. However, those Articles were rejected by the Secretary of State because they were improperly executed. It was not until February 26, 1999 that Articles of Incorporation were formally granted.

{¶ 12} "This followed a meeting at the gurudwara on January 17, 1999 in which [appellants] claim that the Articles of Incorporation were approved by the General Body of the temple. That issue [was] strongly contested by [appellees] in this case."

{¶ 13} The trial court found that the Corporation was improperly incorporated under the laws of the State of Ohio and thus was void ab inito. The trial court ordered that an interim executive committee be formed to organize and conduct an election in accordance with the Society's constitution to elect an executive

committee. Also, the trial court ordered that all title to the property be placed back into the name of the Society and that the appellants provide a full accounting for the assets that they controlled. Finally, appellants were ordered to reimburse the Society for any money the Society expended for the costs of the litigation. Appellants now appeal this decision raising three assignments of error.

## Assignment of Error No. 1

{¶ 14} "The lower court erred in granting judgment for the plaintiffs and ordering title to all property including the Gurudwara in the name of the Guru Nanak Society and related relief."

{¶ 15} Appellants contend that the trial court incorrectly dissolved the Corporation by finding that it was void ab inito and ordering all title to property placed back in the name of the Society. Appellants assert that the trial court must follow R.C. 1702.52 [1] in order to dissolve a corporation, and that the trial court did not meet these statutory requirements. Furthermore, appellants claim that because the Corporation was a corporation under Ohio law and was incorrectly dissolved, they should not have to reimburse the Society for any costs incurred in defense of appellees' lawsuit.

{¶ 16} R.C. 1702.08 provides directions for a society or association wishing to incorporate. It states:

{¶ 17} "When an unincorporated society or association * * * authorizes the incorporation of such society or association, by the same procedure and affirmative vote of its voting members as the * * * constitution * * * of such society or association requires for an amendment to such fundamental agreement, or if no such vote is specified, by a majority vote of the voting members * * *, at a duly convened meeting the purpose of which is stated in the notice of the meeting, then upon the filing of the articles under section 1702.04 of the Revised Code setting forth such facts and that such required vote has been obtained, such society or association shall become a corporation * * *." R.C. 1702.08(A).

{¶ 18} In the case sub judice, the trial court correctly determined that appellants did not follow R.C. 1702.08 in their quest to incorporate the Society. In 1985, the Society formally adopted a constitution. Among other procedural matters, the constitution describes how the Society determines general and voting membership, and conducts the voting and amendment processes.

{¶ 19} Pursuant to Article Five of the constitution, "The General Body alone, as a primary organ of the organization, shall have the power to amend or revise

---

1. R.C. 1702.52 outlines the requirements to have a corporation judicially dissolved.

this constitution and the by-laws for the management of the affairs of the organization." Article Twelve states, "This Constitution can be amended by a two-thirds (⅔) majority vote submitted by any other means, provided that the vote is acknowledged by two other members."

{¶ 20} Appellants did not conform to the edicts of the Society's constitution when they attempted to incorporate the Society. Some of the trustees of the Society discussed and proposed incorporating the Society, but the record relates that no formal vote was taken by the General Body to affirmatively incorporate the Society. Appellants believed the General Body of the Society understood and consented implicitly to the incorporation of the Society. Accordingly, one of the appellants testified that "there wasn't any need [to] vote." Hence, by not conducting a vote among the General Body, appellants did not conform to the Society's constitution when they attempted to convert the Society into a corporation.

{¶ 21} Consequently, the trial court correctly found that the Society was not properly incorporated pursuant to R.C. 1702.08. Absent a legally created corporation, the trial court was not required to follow R.C. 1702.52. As such, the court did not err in ordering title to the Gurudwara to be placed back in the name of the Society or in ordering appellants to repay the Society for any of the Society's money used in the defense of the litigation. The Corporation did not legally represent the Society and appellants did not have the authority to use the Society's money for defense or encumber the Society's property. Accordingly, appellants' first assignment of error is overruled.

Assignment of Error No. 2

{¶ 22} "The lower court erred in granting judgment for the plaintiffs and ordering plaintiffs' counsel to submit a list of five members of the Guru Nanak Society to serve as an interim executive committee to deal with 'interim issues,' conduct an election, and determine who was eligible to vote."

{¶ 23} Appellants maintain that the trial court erred in ordering an interim executive committee to be formed for the purpose of organizing and conducting an election in accordance with the Society's constitution. Appellants further contend that the individuals chosen to serve on the interim committee are all of appellees' choosing and do not represent the Society. They also maintain that it is wrong for this interim committee to determine who is a member of the organization under the Society's constitution. Finally, appellants contend that the trial court breached the "Church/State boundary" of the First Amendment in ordering the election to be conducted.

{¶ 24} The government has an inherent power to regulate religious activities in a reasonable and nondiscriminatory manner in order to protect the safety,

good order, peace, and comfort of society. 16A American Jurisprudence 2d (1998) 284, Constitutional Law, Section 47. However, civil courts lack jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of religious organizations. *Tibbs v. Kendrick* (1994), 93 Ohio App.3d 35, 40, 637 N.E.2d 397. Where the dispute involves nondoctrinal contractual disputes, a civil court retains jurisdiction to hear the dispute. Id. at 42, 637 N.E.2d 397.

{¶ 25} To determine whether a court has subject matter jurisdiction over a dispute, it must perform a two-step analysis by first determining whether the organization is hierarchical[2] or congregational.[3] Id. at 43, 637 N.E.2d 397. If the organization is congregational in nature, then the court determines whether the dispute is ecclesiastical or secular in nature. Id. The court maintains jurisdiction over secular issues. Id. at 42, 637 N.E.2d 397.

{¶ 26} The Society operates as a congregational Sikh religious organization. Although there are many other congregations that practice the Sikh religion, the many congregations are not controlled by an overall ruling organization of the Sikh religion.

{¶ 27} A religious organization is governed by whatever constitution, rules, and processes it has put in place for itself. *Calvary Congregational Church, Inc. v. Eppinger* (Feb. 17, 2000), Cuyahoga App. No. 75011, 2000 WL 193216, at * 1. However, a congregational religious organization is not granted the "unbridled right to disregard and to violate the provisions of [its] own written by-laws or constitutions." Id. Thus, conflicting claims as to the use or control of religious property are to be determined by the constitution of the religious organization. *Watson v. Jones* (1871), 13 Wall. 679, 80 U.S. 679, 706, 20 L.Ed. 666.

{¶ 28} A thorough review of the record reveals that the Society and Corporation were not disputing doctrine or religion, but only who controlled the property, namely, the accounts and the Gurudwara. As such, the dispute did not hinge on an ecclesiastical or spiritual dispute, but a non-doctrinal property dispute. Thus, the civil court has proper jurisdiction over the case sub judice.

{¶ 29} As the violence within the Gurudwara indicates,[4] the constitution of the Society needed to be enforced. By ordering an interim executive committee be

---

2. A hierarchical organization is one where the congregation is a subordinate member of a general organization in which there are superior or ecclesiastical tribunals with ultimate power of control over the whole membership of that general organization. *Tibbs v. Kendrick* (1994), 93 Ohio App.3d 35, 41–42, 637 N.E.2d 397.

3. A congregational organization is one where the congregation is strictly independent of other ecclesiastical associations and owes no fealty or obligation to a higher organizational authority. *Tibbs v. Kendrick* (1994), 93 Ohio App.3d 35, 42, 637 N.E.2d 397.

4. During the trial court proceedings, the Society had to hire police officers to act as security during the meetings held in the Gurudwara to ensure that no outbreaks of violence would

formed to organize and conduct elections for the Society in accordance with the Society's constitution, the trial court was ensuring that the constitution of the Society would be enforced. The trial court did allow appellees to choose all five of the interim executive committee members. However, the appellees invited appellants to name a person to the interim committee. Appellants declined.

{¶ 30} The interim committee also determined who were members of the Society. According to the record, the interim committee sent a list of members to appellees and received no feedback. The record further stated that proxies, as allowed by the Society's constitution, were sent to members who could not attend the election. The record also stated that appellants did not vote at the election.

{¶ 31} The trial court did not err in ordering the formation of an interim committee to conduct an election of the executive committee. "The government of [religious organization] matters is entrusted to the membership." *First Baptist Church of Glen Este v. State* (S.D.Ohio 1983), 591 F.Supp. 676, 683. Thus, appellants' second assignment of error is overruled.

### Assignment of Error No. 3

{¶ 32} "The trial court erred in denying defendants' motion to dismiss made at the close of plaintiffs' case (T.p. 691–705)."

{¶ 33} Appellants maintain that appellees did not pay the membership fee required by the Society's constitution and thus have no standing to file suit against appellants or the Corporation. They contend that the court may not determine who is a member of a religious organization, but that where membership is in dispute, it "must be decided by stipulation of the parties."

{¶ 34} Generally, civil court lacks jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of a * * * religious organization. *Tibbs v. Kendrick*, 93 Ohio App.3d at 40, 637 N.E.2d 397. Courts have made membership determinations in the past. See *Honey Creek Regular Baptist Church v. Wilson* (App.1950), 50 Ohio Law Abs. 52, 44 O.O. 50, 92 N.E.2d 419 (where a plaintiff was found to be a member of the church, where by custom a new member is received by the extending of the right hand in fellowship, even though he did not receive a hand because that custom had ceased to be practiced).

{¶ 35} Furthermore, a trial court's conclusions on a motion to dismiss pursuant to Civ.R. 41(B)(2) may not be set aside by a reviewing court unless it is "erroneous as a matter of law or against the manifest weight of the evidence." *State ex rel. Fisher v. Rose Chevrolet, Inc.* (1992), 82 Ohio App.3d 520, 524, 612

---

occur. Prior to the trial, there was a scuffle where a tape recorder was broken. Since the trial court meted out its decision, the police were dispatched to the Gurudwara in order to disperse a "riot."

N.E.2d 782, citing *Janell, Inc. v. Woods* (1980), 70 Ohio App.2d 216, 217, 24 O.O.3d 266, 435 N.E.2d 1138. Moreover, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at the syllabus.

{¶ 36} In 1985, the Society adopted a constitution. As noted earlier, two of the articles within the constitution concern membership and voting. Article Three states that membership is for one calendar year to anyone who pays a one-dollar fee. Article Four states that those members of the Society who are over the age of 18, residents of the tri-state area, and members for at least three months constitute the voting membership.

{¶ 37} The record relates that since the inception of the Society, the one-dollar fee was never separately collected or recorded. An early president and drafter of the 1985 constitution testified that one dollar was selected as the membership fee because "it's the tradition of the Sikh religion that * * * when we come for worship we bow to the holy book, and traditionally, one dollar is the offering." Others also testified supporting the fact that when bowing to the holy book, the worshipper makes an offering.

{¶ 38} After reviewing the record, weighing the evidence, and considering the credibility of the witnesses, we find that the trial court did not err in denying appellants' motion to dismiss. The decision is neither erroneous as a matter of law nor against the manifest weight of the evidence. Accordingly, appellants' third assignment of error is overruled.

{¶ 39} The judgment of the trial court is affirmed.

Judgment affirmed.

VALEN, J., concurs.

WALSH, P.J., concurs in judgment only.