[Cite as *Adkison v. Williams*, 2019-Ohio-4289.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| HERSCEN ADKISON, et al. | JUDGES:<br>Hon. John W. Wise, P J. |
| Plaintiffs-Appellants | Hon. Patricia A. Delaney, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 18 CA 119 |
| DEREK J. WILLIAMS, et al. | |
| Defendants-Appellees | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No.  18 CV 573 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 17, 2019 |


APPEARANCES:

| For Plaintiff-Appellants | For Defendant-Appellees |
|---|---|
| EDWARD CLARK CORLEY<br>3 North Main Street<br>Suite 603<br>Mansfield, Ohio  44902 | KIMBERLEE J. KMETZ<br>KMETZ LAW LLC<br>75 Milford Drive, Suite 203<br>Hudson, Ohio  44236 |

*Wise, John, P. J.*

{¶1}    Plaintiffs-Appellants Herscen Adkison, *et al.* appeal from the decision of the Court of Common Pleas, Richland County, which granted the motion of Defendants-Appellees Derek J. Williams, *et al.* for judgment on the pleadings in a civil lawsuit. The relevant facts leading to this appeal are as follows.

{¶2}    According to the pleadings in the trial court, the thirty-one appellants in this matter are or were members of the Mount Calvary Baptist Church in Mansfield, Ohio. Appellees are Derek J. Williams (the church's pastor), Robert D. Chapmon (chairman of the church's deacon board), Denise Windham-Brown (interim chairwoman of the church's trustee board), two trustees, two deacons, and the church itself.

{¶3}    Appellants in essence have alleged that at various times in 2016 and 2017, they were notified by leaders of the congregation that they were no longer considered church members, and that these decisions were not made in accordance with the congregational by-laws.

{¶4}    On September 21, 2018, appellants filed an amended civil complaint against appellees in the Court of Common Pleas, Richland County ("trial court"), seeking and/or alleging the following: 1) declaratory judgment; 2) injunction against retaliatory action; 3) injunction against disposing or encumbering of church assets; 4) breach of fiduciary duty; 5) breach of contract; and 6) intentional infliction of emotional distress.

{¶5}    On September 27, 2018, appellees filed a motion to dismiss *inter alia* for lack of subject matter jurisdiction, pursuant to Civ.R. 12(B)(1). On October 4, 2018, appellants filed a memorandum in opposition to said motion.  The trial court issued a nine-

page judgment entry dismissing the entire case for lack of subject matter jurisdiction on October 31, 2018.

{¶6}     Appellants filed a notice of appeal on November 21, 2018. They herein raise the following six Assignments of Error:

{¶7}     "I.   THE TRIAL COURT ERRED IN RULING THAT THE ECCLESIASTIC ABSTENTION DOCTRINE, PREVENTED IT FROM DECIDING WHETHER OR NOT THE ACTIONS OF THE DEFENDANTS/APPELLEES, IN DISMISSING THE PLAINTIFFS/APPELLANTS FROM MEMBERSHIP OF THE CHURCH, WITHOUT AUTHORIZATION FROM THE CHURCH MEMBERSHIP, WAS CONTRARY TO THE CONSTITUTION AND BYLAWS OF THE CHURCH AND *VOID AB INITIO.*

{¶8}     "II.   THE TRIAL COURT ERRED IN RULING THAT THE ECCLESIASTIC ABSTENTION DOCTRINE WOULD PREVENT THE SUBSTANTIAL LIKELIHOOD OF THE PLAINTIFFS/APPELLANTS FROM PREVAILING ON THE MERITS AND THUS PREVENT THE REMEDY OF INJUNCTIVE RELIEF FOR RETALIATORY ACTIONS.

{¶9}     "III.   THE TRIAL COURT ERRED IN RULING THAT THE ECCLESIASTIC ABSTENTION DOCTRINE WOULD PREVENT THE LIKELIHOOD OF THE PLAINTIFFS/APPELLANTS FROM PREVAILING ON THE MERITS AND THUS PREVENT THE REMEDY OF INJUNCTIVE RELIEF FOR THE DISPOSING OR ENCUMBERING OF CHURCH ASSETS.

{¶10}     "IV.   THE TRIAL COURT ERRED IN RULING THAT THE ECCLESIASTIC ABSTENTION DOCTRINE, PREVENTED IT FROM DECIDING WHETHER OR NOT THE ACTIONS OF THE DEFENDANTS/APPELLEES IN DISMISSING THE PLAINTIFFS/APPELLANTS FROM CHURCH MEMBERSHIP, WITHOUT THE CHURCH

MEMBERSHIP VOTING TO AUTHORIZE THE DISMISSALS, AS REQUIRED BY THE CONSTITUTION AND BYLAWS, WAS A BREACH OF THEIR FIDUCIARY DUTY TO THE PLAINTIFFS/APPELLANTS.

{¶11} "V. THE TRIAL COURT ERRED IN RULING THAT THE ECCLESIASTIC ABSTENTION DOCTRINE, PREVENTED IT FROM DECIDING WHETHER OR NOT THE ACTIONS OF THE DEFENDANTS/APPELLEES IN DISMISSING THE PLAINTIFFS/APPELLANTS FROM CHURCH MEMBERSHIP, WITHOUT THE CHURCH MEMBERSHIP VOTING TO AUTHORIZE THE DISMISSALS AS REQUIRED BY THE CONSTITUTION AND BYLAWS, CONSTITUTED A BREACH OF CONTRACT.

{¶12} "VI. THE TRIAL COURT ERRED IN RULING THAT THE ECCLESIASTIC ABSTENTION DOCTRINE, PREVENTED IT FROM DECIDING WHETHER OR NOT THE DEFENDANTS/APPELLEES KNEW OR SHOULD HAVE KNOWN THAT THEIR INTENTIONAL ACTIONS OF DISMISSING THE PLAINTIFFS/APPELLANTS FROM CHURCH MEMBERSHIP, WITHOUT THE CHURCH MEMBERS VOTING TO AUTHORIZE THE DISMISSALS AS REQUIRED BY THE CONSTITUTION AND BYLAWS, WOULD CAUSE THE PLAINTIFFS/APPELLANTS EMOTIONAL DISTRESS."

I., II., III., IV., V., VI.

{¶13} In their First, Second, Third, Fourth, Fifth, and Sixth Assignments of Error, appellants contend the trial court committed reversible error in concluding that the ecclesiastical abstention doctrine precluded the court from addressing the merits of various aspects of appellants' civil complaint. We disagree on all points.

*Standard of Review*

**{¶14}** The standard of review for dismissal for want of subject matter jurisdiction pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. *See Dingey v. Registrar, Ohio Bur. of Motor Vehicles*, 5th Dist. Muskingum No. CT2019-0012, 2019-Ohio-3338, ¶ 12, citing *State ex rel. Bush v. Spurlock,* 42 Ohio St.3d 77, 537 N.E.2d 641 (1989). Such a determination involves a question of law that we review *de novo. Huntsman v. State*, 5th Dist. Stark No. 2016CA00206, 2017-Ohio-2622, ¶ 22. "[T]he question of subject matter jurisdiction is so basic that it can be raised at any stage before the trial court or any appellate court, or even collaterally in subsequent and separate proceedings." *State v. Kohr*, 5th Dist. Licking No. 2008 CA 00147, 2009-Ohio-5297, ¶ 47, citing *State v. Williams* (1988), 53 Ohio App.3d 1, 4, 557 N.E.2d 818.

**{¶15}** Civ.R. 12(B)(1) allows a court to consider any pertinent evidentiary materials outside of the pleadings when determining its own subject matter jurisdiction. *Deutsche Bank Natl. Tr. Co. v. Rudolph*, 8th Dist. Cuyahoga No. 98383, 2012-Ohio-6141, f.n. 4 (additional citation omitted).

*Overview of the Ecclesiastical Abstention Doctrine*

**{¶16}** The First Amendment to the United States Constitution states, in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ***."

**{¶17}** In that light, the United States Supreme Court has long recognized: "In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality

and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect." *Watson v. Jones*, 80 U.S. 679, 728, 20 L.Ed. 666 (1871). The Court has also interpreted the Free Exercise Clause of the First Amendment as a "constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization ... on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich,* 426 U.S. 696, 713, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976).

**{¶18}** Under Ohio law, the first step in consideration of the applicability of what has developed into the "ecclesiastical abstention doctrine" is to determine whether the pertinent religious organization is hierarchical or congregational. *See Harrison v. Bishop*, 6th Dist. No. L-14-1137, 2015-Ohio-5308, 44 N.E.3d 350, ¶ 41, citing *Bhatti v. Singh,* 148 Ohio App.3d 386, 2002-Ohio-3348, 773 N.E.2d 605, ¶ 25 (2nd Dist.). In the case *sub judice*, there is no dispute that Mount Calvary Baptist Church does not function within a hierarchical structure; therefore, in our analysis below, we may directly proceed to the second step: "If the organization is congregational, then the court determines whether the dispute is ecclesiastical or secular in nature." *Id.*, citing *Tibbs v. Kendrick,* 93 Ohio App.3d 35, 43, 637 N.E.2d 397 (8th Dist.1994). Civil courts lack jurisdiction over the former and maintain jurisdiction in certain circumstances over the latter. *Turner v. Tri-County Baptist Church of Cincinnati*, 12th Dist. Butler No. CA2018-03-050, 2018-Ohio-4658, 122 N.E.3d 603, ¶ 13.

*Church Membership*

**{¶19}** Appellants first argue the trial court erroneously applied the ecclesiastical abstention doctrine to the question before it of appellants' church membership removal. According to the church's written bylaws: "Mt. Calvary Baptist Church is empowered in the body of members who copose [*sic*] it. Thus, the final authority for decisions shall be the church membership to whom the officers are responsible." Mount Calvary Baptist Church Constitution and Bylaws, at 2.

**{¶20}** As indicated *supra*, there is no dispute that Mount Calvary Baptist Church is congregational in structure. As such, "*** the church is governed by its congregation, which is the supreme authority on issues concerning church government." *Mt. Pilgrim Baptist Church, Inc. v. Bishop*, 6th Dist. No. L-14-1206, 2015-Ohio-5161, 56 N.E.3d 245, ¶ 44, citing *Smith v. White,* 7 N.E.3d 552, 2014-Ohio-130, ¶ 29 (2d Dist.). In other words, in this instance, the "highest judicatory of the religious organization" (*see Serbian Eastern Orthodox Diocese*, *supra*) is the congregational body itself. In such a situation, "*** the church, through its congregation, is ultimately responsible for resolving issues of internal church governance." *Mt. Pilgrim Baptist Church, supra.* At the same time, a congregational church is not granted the "unbridled right to disregard and to violate the provisions of [its] own written by-laws or constitutions." *See Calvary Congregational Church, Inc. v. Eppinger,* 8th Dist. Cuyahoga No. 75011, 2000 WL 193216 (citation omitted).

**{¶21}** However, as much as appellants in this instance seek to couch this dispute as a straightforward question regarding the bylaws on congregational voting, we are persuaded upon review that this dispute presents a question of internal church

governance. In particular, we observe additional provisions under the Mount Calvary Baptist Church bylaws require that the final step regarding dismissal of membership for conduct reasons is to have the deacon board "take it to the church," according to Chapter 18, verses 15-17 of the Gospel of Matthew in the New Testament. *See* Trial Court Exhibit 1, at page 3. This type of scriptural interpretation is clearly outside of the ambit of a court of law pursuant to the requirements of the First Amendment. *See Watson*, *supra.* Thus, under the circumstances before us in this matter, we hold the question of whether appellants were wrongfully dismissed from membership according to the written procedural mechanisms of the church bylaws involved an ecclesiastical question that the trial court, under Civ.R. 12(B)(1), correctly abstained from resolving.

**{¶22}** Accordingly, the trial court did not err in granting appellees' motion to dismiss regarding the general claims by appellants concerning membership removal.

### *Injunctive Relief re: Retaliatory Actions and Church Asset Issues*

**{¶23}** A party seeking an injunction must prove entitlement to that relief by clear and convincing evidence. *Collins v. Moran,* 7th Dist. No. 02CA218, 2004–Ohio–1381, ¶ 18. Generally, the purpose of an injunction is to avoid a future injury, as opposed to fixing a past wrong. *See*, *e.g.*, *Martin v. Lake Mohawk Property Owner's Association,* 7th Dist. Carroll No. 04-CA-815, 2005-Ohio-7062, ¶ 49. It is well settled that an injunction will not issue where there is an adequate remedy at law. *Mid–America Tire, Inc. v. PTZ Trading Ltd.,* 95 Ohio St.3d 367, 2002–Ohio–2427, ¶ 74 (citations omitted).

**{¶24}** In their amended complaint in the present case, appellants first alleged in pertinent part as follows: "Appellants contend and believe that, unless restrained by [the

trial court], the Defendants will seek retaliation against the Plaintiffs, for their actions in this matter." Amended Complaint at paragraph 51.

**{¶25}** While we recognize that the complaint in question did not progress past the Civ.R. 12(B)(1) stage, appellants presently do not expound upon the nature of the proposed "retaliation" against which they sought the protection of injunctive relief. Upon review, we are unpersuaded that appellants' general request for injunctive relief presented a secular question proper for review under the civil jurisdiction of the common pleas court.

**{¶26}** Appellants secondly alleged that injunctive relief was required to prevent appellees from selling, mortgaging, or encumbering church assets. *See* Amended Complaint at paragraph 54.

**{¶27}** Legal recognition of the ecclesiastical abstention doctrine does not mean churches are above the law. *See Heard v. Johnson*, 810 A.2d 871, 879 (D.C.2002). For example, as recognized by the Kansas Supreme Court, courts have the power to determine who owns church property. *Kennedy v. Gray*, 248 Kan. 486, 492, 807 P.2d 670, 675 (1991), citing *Gospel Tabernacle Body of Christ Church v. Peace Publishers & Co.,* 211 Kan. 420, 506 P.2d 1135. The United States Supreme Court has concluded: "Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969).

**{¶28}** However, in the case *sub judice*, appellants have not articulated what secular interests, if any, they have in any property owned or controlled by the church. Appellants' request for injunction as related to church assets thus appears to be merely an extension of their challenge to removal from membership, which, as analyzed *infra*, presents an ecclesiastical question. As such, we find no error in this regard as to the trial court's granting of Civ.R. 12(B)(1) dismissal.

<u>*Claim of Breach of Fiduciary Duty*</u>

**{¶29}** In their amended complaint, appellants alleged that their dismissal from church membership "constituted a violation of the Constitution and Bylaws of the Church, and a breach of the Defendant's [*sic*] obligation and fiduciary duty, to the Plaintiffs." Amended Complaint at paragraph 58. We find this claim, as pled, is also an attempted extension of appellants' basic legal challenge to membership removal, and thus presents an ecclesiastical question of internal congregational governance, outside of a civil court's jurisdiction. *Cf. State ex rel. First New Shiloh Baptist Church v. Meagher*, 1st Dist. Hamilton No. C-960371, 1997 WL 180266 (holding, in the context of a writ of prohibition, "*** the lower court has no jurisdiction over the claims brought by the individual members of the congregation seeking to oust the pastor or hold the Board liable for breach of fiduciary duty to the congregation").

<u>*Claim of Breach of Contract*</u>

**{¶30}** Appellants' breach of contract claim is based on the following legal theory: "As members of the Church, the Plaintiffs agreed to be bound by the Constitution and Bylaws of the Church, as a benefit of membership. The Church Constitution and Bylaws

constituted a contract between the Church and the Plaintiffs." Amended Complaint at paragraph 60.

**{¶31}** Clearly, churches have been found to be subject to liability under valid contracts. *See*, *e.g.*, *Minker v. Baltimore Annual Conference of United Methodist Church, et al.,* 894 F.2d 1354, 282 U.S.App. D.C. 314 (1990) (claim arising from alleged oral contract between pastor and church). However, in the present case, we find appellants have not sufficiently set forth, either in their complaint or upon appeal, how any secular interests and/or contractual rights were impacted by appellees' membership removal actions. We again hold this claim presents an ecclesiastical question of internal congregational governance, outside of a civil court's jurisdiction.

*Claim of Infliction of Emotional Distress*

**{¶32}** On the final claim on appeal, the case cited by appellants is *Zhelezny v. Olesh*, 10th Dist. Franklin No. 12AP-681, 2013-Ohio-4337, ¶ 54, in which the Tenth District Court of Appeals found that a trial court had erred when it granted a motion by a church's pastor and other leaders for judgment on the pleadings as to a claim for intentional infliction of emotional distress brought by a former member. However, *Zhelezny* involved extreme factual allegations, including "heated arguments, threats of violence and physical confrontations." *Id.* at ¶ 2. Appellants' claim in the case *sub judice* derives from the central theme of membership removal (conducted via letters or telephone calls to appellants), and we concur with the trial court's conclusion that no secular basis exists for allowing the emotional distress claims to proceed in a civil court.

## *Conclusion*

**{¶33}** Appellants' First, Second, Third, Fourth, Fifth, and Sixth Assignments of Error are therefore overruled.

**{¶34}** For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.


By: Wise, John, P. J.

Delaney, J., and

Wise, Earle, J., concur.


JWW/d  0930