TIBBS et al., Appellants,

v.

KENDRICK et al., Appellees.

[Cite as *Tibbs v. Kendrick* (1994), 93 Ohio App.3d 35.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64452.

Decided Feb. 7, 1994.

36

*F. Thomas Vickers* and *Debra R. Shpigler,* for appellants.

*Earle C. Horton,* for appellees.

---

DONALD C. NUGENT, Judge.

This is an appeal from a judgment of the Cuyahoga County Court of Common Pleas which granted a motion to dismiss filed by the defendants-appellees, Sylvester Kendrick et al.

Plaintiffs-appellants, Elbert Tibbs et al., initiated the present action on March 5, 1992 through the filing of a verified complaint, alleging breach of contract and breach of fiduciary duties. Appellants are members of the Lee–Seville Baptist Church (hereinafter the "Church"). Appellees, other than defendant Otis F. Newton, are members of the Board of Trustees of the Church. Appellee Newton is employed by the Church as its pastor pursuant to a contract dated January 25, 1987. Count one of the complaint alleges that appellee Newton breached the contract by becoming employed by an insurance company without first seeking or obtaining the consent of the Church. Appellants further allege that appellees-trustees have breached their fiduciary duties to the members of the Church by failing and refusing to take action against Newton despite their knowledge of Newton's outside employment. Count two of the complaint alleges that the plaintiffs-appellants fairly and accurately represent the interests of the members of the Church and seek to enforce the right of the Church to terminate the contract between the Church and Newton. Plaintiffs-appellants prayed for $50,000 in damages and an order from the court requiring the trustees to take action to formally terminate the contract. Attached to the complaint is a copy of the contract between the Church and appellee Newton and copies of a "demand to take action" notice delivered to the trustees.

In response to the complaint, defendants-appellees filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and 12(B)(6) on May 5, 1992. Appellees argued that appellants' complaint should be dismissed, as the trial court lacked subject matter jurisdiction over the ecclesiastical matters in dispute and that the complaint failed to state a claim upon which relief could be granted.

Appellee Newton's contract with the Church provides as follows:

"(2) SOLE EMPLOYMENT OF EMPLOYEE. Employee shall devote his entire time and the best of his ability to the business of the church, and shall not become associated or indirectly interested in another church or business without first obtaining consent of the Lee–Seville Baptist Church."

On March 1, 1991, appellee Newton accepted outside employment, allegedly without seeking or obtaining prior approval of the Church. Appellees argue,

however, that on February 28, 1992, a special meeting for March 11, 1992 was called for the reason that the Church's annual meeting was not called on time. An affidavit of Sylvester Kendrick, Chairman of the Board of Trustees of the Church, is attached to appellees' motion to dismiss. Kendrick avers that this "Special Called Annual Meeting was called for the purpose of taking care of church business and a quorum was present for the official transaction of such." Notice of such meeting is also attached to appellees' motion.

On March 11, 1992, the "special called annual meeting" was held. Appellees argue that at this meeting, the issue of Rev. Newton's receiving prior approval for his outside employment was raised and thereafter ratified by the congregation through a majority vote. Shirley Stout, Church Clerk, averred that she was present for such meeting and recorded the minutes of said meeting. Attached to Stout's affidavit are the minutes to said meeting, which reveal that the membership of the Lee–Seville Baptist Church resolved that "(1) the association with a business by Rev. Otis F. Newton * * * is consented to, approved and confirmed * * *, (2) the continuing association of Rev. Otis F. Newton with such business is consented to and approved * * * [and] (3) the actions of the * * * Trustees of Lee–Seville Baptist Church with respect to any alleged breach of his employment contract by Rev. Newton are ratified, approved and confirmed, and none of them have breached any fiduciary duty to Lee–Seville Baptist Church."

Appellants, responding by way of a brief in opposition to appellees' motion to dismiss, argued that the common pleas court has jurisdiction over contract/tort matters of a congregational church such as the Lee–Seville Baptist Church and that the so-called ratification of appellee Newton's breach of contract was an ineffective act, since notice of the meeting was not properly given. Appellants contend that the notice attached to appellees' motion did not set forth any particular purpose for the March 11th meeting as required by R.C. 1702.18. Additionally, appellants contend that the purported ratification was ineffective, since no quorum was present. Appellants attached to their brief in opposition "the most recent membership list the Church has made available to the plaintiffs which demonstrates that there are 515 members of the church." Additionally, appellants point to the minutes of the special called annual meeting, which show that fifty-three members of the Church were present. Appellants argue that the members present at such meeting do *not* constitute a quorum as provided by the Church's constitution. Section 8, Article VI of the Church's constitution provides:

"A. 10% of the members 18 years and over shall constitute a quorum for the transaction of business of the church except in matters pertaining to the calling and termination of the Pastor, selling or encumbering of real estate belonging to the church. 51% of the church members present shall constitute a majority.

"B. In matters pertaining to the Pastor, selling or encumbering of real estate belonging to the church, 25% of the members 18 years and over will constitute a quorum. A two-thirds vote of the members present will be considered a majority."

Based on the foregoing, the trial court granted appellees' motion to dismiss. Appellants timely appeal, raising the following sole assignment of error for our review:

"The trial court erred in granting defendants-appellees' motion to dismiss."

Appellants contend the trial court erred in granting appellees' motion to dismiss because the trial court has jurisdiction over non-ecclesiastical/contractual issues. Appellants argue that R.C. 2305.01 confers subject matter jurisdiction over the contractual and tort issues raised by their complaint. Finally, appellants contend that the trustees did not properly ratify appellee Newton's breach of contract, nor did the Church ratify appellees-trustees' breach of fiduciary duties.

Appellees' motion to dismiss was brought pursuant to Civ.R. 12(B)(1), contending the trial court lacked subject matter jurisdiction to hear appellants' claims, and pursuant to Civ.R. 12(B)(6), contending that appellants failed to state a claim upon which relief can be granted.

Civ.R. 12(B) provides, in pertinent part:

"(B) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19 or Rule 19.1. * * * When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. Provided however, that the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."

In determining whether a plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, a trial court is not confined to the allegations of the complaint, and it may consider evidentiary material pertinent to such inquiry without converting the motion to a motion for summary judgment. *Southgate Dev. Corp. v.*

*Columbia Gas Transm. Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526; *Jenkins v. Eberhart* (1991), 71 Ohio App.3d 351, 354, 594 N.E.2d 29, 30–31; and *McHenry v. Indus. Comm.* (1990), 68 Ohio App.3d 56, 62, 587 N.E.2d 414, 418–419. In *Jenkins,* the Scioto County Court of Appeals adopted the federal standard of review employed in ruling on a Fed.R.Civ.R. 12(b)(1) motion. The court of appeals held that a trial court "may dismiss a complaint for lack of jurisdiction over subject matter on the basis of '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Jenkins, supra,* at 355, 594 N.E.2d at 31, citing *Williamson v. Tucker* (C.A.5, 1981), 645 F.2d 404, 413.

While a court may rely on factual materials outside the complaint in ruling on a Civ.R. 12(B)(1) motion, in resolving a Civ.R. 12(B)(6) motion, a court is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials unless the motion is converted into one for summary judgment under Civ.R. 56. *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713. Moreover, the trial court must first notify the parties of its intention to convert a Civ.R. 12(B)(6) motion to dismiss into a Civ.R. 56 motion for summary judgment. *Id.* at 97, 563 N.E.2d at 717; *Petrey v. Simon* (1983), 4 Ohio St.3d 154, 4 OBR 396, 447 N.E.2d 1285.

It is well settled that "when a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 60, 565 N.E.2d 584, 589, citing *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756. In order for a trial court to grant a motion to dismiss for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. University Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224–225, 327 N.E.2d 753, 755.

The trial court did not identify in its journal entry whether it was granting appellees' motion to dismiss pursuant to Civ.R. 12(B)(1) or Civ.R. 12(B)(6).[1] We shall first consider whether a dismissal of the action was appropriate pursuant to Civ.R. 12(B)(1).

It is well established that civil courts lack jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of a church or religious organiza-

---

1. In *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477, 479, fn. 3, the Ohio Supreme Court noted that the proper procedure for a trial court is to clearly identify the basis for its ruling when ruling on a motion to dismiss under Civ.R. 12(B)(1) and 12(B)(6).

tion. *Watson v. Jones* (1871), 80 U.S. (13 Wall.) 679, 20 L.Ed. 666; *Presbyterian Church v. Hull Church* (1969), 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658; *Serbian E. Orthodox Diocese v. Milivojevich* (1976), 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151. Both *Hull Church* and *Milivojevich* quote with approval the following passage from *Watson:*

"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe [on] personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. * * * All who unite themselves to such a body [the general church] do so with an implied consent to [its] government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for." 80 U.S. (13 Wall.) at 728–729, 20 L.Ed. at 676–677.

The above-quoted passage from *Watson* is now embedded within our First and Fourteenth Amendment jurisprudence. The court's decision in *Watson* has "a clear constitutional ring." See *Hull Church, supra,* 393 U.S. at 446, 89 S.Ct. at 604, 21 L.Ed.2d at 663–664; and *Milivojevich, supra,* 426 U.S. at 724–725, 96 S.Ct. at 2387–2388, 49 L.Ed.2d at 171–172.

▋ Generally, the question of who will preach from the pulpit of a church is an ecclesiastical question, review of which by the civil courts is limited by the First and Fourteenth Amendments to the United States Constitution. *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N.A.* (1952), 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120. In *Kedroff,* the United States Supreme Court noted:

" * * * The opinion [in *Watson v. James, supra* ] radiates * * * a spirit of freedom for religious organizations, and independence from secular control or manipulations—in short, power to decide for themselves, free from state interference, matters of *church government* as well as those of faith and doctrine. *Freedom to select the clergy, where no improper methods of choice are proven, we think, must now be said to have federal constitutional protection as part of the free exercise of religion against state interference.*" (Emphasis added.)

Civil courts recognize the difference between hierarchical and congregational churches. "A hierarchical polity exists when 'the religious congregation * * * is but a subordinate member of some general church organization in which there

are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization.' " *State ex rel. Morrow v. Hill* (1977), 51 Ohio St.2d 74, 76, 5 O.O.3d 45, 46–47, 364 N.E.2d 1156, 1158, citing *Watson v. Jones, supra.* "A congregational polity, on the other hand, exists when 'a religious * * * congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to a higher authority.' " *Id.*

■ In questions involving "who should preach from the pulpit," a court must first consider whether the church is hierarchical or congregational. If the church is hierarchical, civil courts generally lack jurisdiction to hear the dispute. Civil courts "are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Milivojevich, supra,* 426 U.S. at 713, 96 S.Ct. at 2382, 49 L.Ed.2d at 165; *McDonnell v. Episcopal Diocese of Georgia* (Ga.App.1989), 191 Ga.App. 174, 381 S.E.2d 126; and *Hutchinson v. Thomas* (C.A.6, 1986), 789 F.2d 392. As the court in *McDonnell* explained, "[i]nextricably entangled [in the dispute] is whether the priest's performance of his duties as a priest met the requirement of his church as measured by ecclesiastical concerns." *McDonnell,* 191 Ga.App. at 177, 381 S.E.2d at 128. However, where the dispute involves non-doctrinal contractual disputes, a civil court retains jurisdiction to hear the dispute. *Reardon v. Lemoyne* (1982), 122 N.H. 1042, 454 A.2d 428. Nonetheless, civil courts must not infringe upon a hierarchical church's disposition of an ecclesiastical dispute.

■ If the church is congregational, a civil court retains jurisdiction to determine whether the decision concerning "who shall preach from the pulpit" was made by the proper church authority. See *Salzgaber v. First Christian Church* (1989), 65 Ohio App.3d 368, 583 N.E.2d 1361; *Robinson v. Davis* (1987), 126 A.D.2d 715, 511 N.Y.S.2d 311; *Gillespie v. Elkins S. Baptist Church* (1986), 177 W.Va. 88, 350 S.E.2d 715; *Beulah Missionary Baptist Church v. Spann* (1984), 132 Mich.App. 118, 346 N.W.2d 911; *Hemphill v. Zion Hope Primitive Baptist Church of Pensacola, Inc.* (Fla.App.1984), 447 So.2d 976; *Covington v. Bowers* (Fla.App.1983), 442 So.2d 1068. The court's jurisdiction is limited to purely secular issues, and the court must not be involved in ecclesiastical issues. *Salzgaber, supra,* 65 Ohio App.3d at 372, 583 N.E.2d at 1364; *Gillespie, supra,* paragraph three of the syllabus ("In a wrongful discharge action by a terminated pastor, the courts cannot go beyond completely neutral principles of law to inquire into church doctrine or to determine if the termination was arbitrary."); and *Hemphill, supra,* 447 So.2d at 977.

In resolving disputes between members of a church, a civil court must follow a two-step analysis in determining whether it has subject matter jurisdiction over the controversy. First, the court must determine whether the church is a hierarchical or congregational church. In the present case, it is undisputed that the Lee–Seville Baptist Church is congregational. Next, the court must consider whether the controversies presented by the case involve ecclesiastical or secular issues. In order for this court to determine whether the lower court has subject matter jurisdiction over the controversies presented by the case *sub judice,* this court must review appellants' complaint to determine whether the controversies presented in each count require determination of ecclesiastical or secular issues.

Count one of the complaint alleges that the appellees-trustees, "despite their knowledge and demands of members of the church * * * failed and refused to take any action against Newton for his violation of the contract and, in this respect, each of the defendant trustees have [*sic* ] violated his fiduciary duty to the church."

A person who occupies a fiduciary relationship to another acts as an agent to that person and owes the utmost loyalty and honesty to the principal. *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 165, 542 N.E.2d 654, 659. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis* (1981), 66 Ohio St.2d 74, 78, 20 O.O.3d 64, 66–67, 419 N.E.2d 1094, 1097–1098.

Under the Church's constitution, the trustees are recommended by the Pastor, Board of Deacons and Board of Trustees and appointed by the congregation by a majority vote of those present at a regularly called business meeting. Pursuant to the Church's constitution, the trustees act, and perform various duties, on behalf of the congregation.

Appellants alleged, in count one of their complaint, that the trustees breached their fiduciary duties to the congregation by not seeking to terminate the contract between the Church and appellee Newton. Appellants apparently argue that a majority of the members of the congregation are in favor of terminating the contract of employment. However, inquiry into the relationship between the trustees and the congregation in matters concerning the pastorship would require the courts to consider each party's views of "who should occupy the pulpit." Review of such matters would further require the court to determine the issue of whether the trustees' performance of their duties as trustees met the standards of the congregation and would therefore involve an inquiry into ecclesiastical concerns. Therefore, pursuant to the First and Fourteenth Amendments to the

United States Constitution, civil courts lack subject matter jurisdiction to entertain such matters.

The Ross County Court of Appeals in *Salzgaber, supra,* reached a similar conclusion in holding that the lower court lacked subject matter jurisdiction to entertain a cause of action for tortious interference with an employment contract against two church members who were apparently church officers. The court noted that "[r]eview of subjective termination of co-pastors, necessarily requires inquiry into ecclesiastical matters." *Id.,* 65 Ohio App.3d at 372, 583 N.E.2d at 1364. Likewise, in the present case, a review of subjective judgments by the Church's trustees concerning the termination of appellee Newton's contract of employment would necessarily require inquiry into ecclesiastical matters.

The lower court, therefore, properly dismissed appellants' first cause of action for breach of fiduciary duties for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1).

■ Count two of appellants' complaint sets forth a cause of action for breach of contract against appellee Newton. Appellants "seek to enforce the right of the church to terminate the Contract with defendant Newton based upon defendant Newton's breach of paragraph 2 of the contract." Appellants further seek $50,000 from appellee Newton for his breach and other relief as is just and appropriate. In determining whether the lower court had subject matter jurisdiction to entertain a breach of contract action brought by members of the congregation, a review of the contract and the Church's constitution is appropriate. While the contract in question clearly prohibits appellee Newton's employment, paragraph three of the contract also states that the agreement "shall continue in force and effect for an indefinite period * * * unless either party desires to modify or terminate the agreement and notifies the other party in writing of its desire to terminate or modify * * *."

The Church's constitution provides further light on the subject of the court's jurisdiction. Article VIII provides that the "pastor shall be called for an indefinite period of time" and further provides that the "church may not terminate its relationship with the pastor except by vote of the church at a meeting called for this purpose at which a two-thirds majority of those present have voted in favor of the termination." Thus, the Church's right to terminate the contract with appellee Newton can be accomplished only by a vote of the Church at a meeting called for this purpose, at which a two-thirds majority of those present have voted in favor of the termination.

In the present case, although appellants argue that a civil court has jurisdiction to determine whether the appropriate church authority has made a decision regarding the pastorship, the record does not reveal, and appellants make no

allegations, that a meeting was ever called to determine whether appellee Newton should be terminated as pastor. Moreover, the decision of the individual members of the congregation on how and whether to vote for the termination of appellee Newton's pastorship with the Church would require a review of each member's subjective view on the issue of appellee Newton's termination. This would require the court to inquire into the ecclesiastical question of "who should preach from the pulpit."

Thus, while appellants correctly argue that civil courts have jurisdiction to determine whether the appropriate church authority made a decision concerning a pastor's termination or retention, appellants would have this court intervene and make this decision for the appropriate Church authority. To the contrary, the present case does not require the lower court to determine whether the pastor's termination was made by the appropriate church authority, since such decision has never been made. See *Salzgaber, supra; Robinson, supra; Gillespie, supra; Beulah, supra;* and *Hemphill, supra.* The decision in the present case was never reached, nor was a meeting even called to determine such issues. The Church's own constitution provides the means to make such decision, and this court will not allow the Church's constitution to be subverted by an apparent minority of congregation members who seek to bypass the Church's internal mechanisms in order to have the pastor removed. It is worth repeating that the procedure for termination of the pastor is provided for in the constitution, and there is no record that this provision has been complied with or that the plaintiffs-appellants herein have ever attempted to comply with internal church procedures. For the civil courts to intervene under such circumstances, where there is a complete failure on the part of appellants to follow the procedures outlined in the Church's own constitution for the removal of a pastor, would constitute an unconstitutional attempt to inquire into the purely ecclesiastical matter of "who shall preach from the pulpit" at the congregation's expense.

The trial court was, therefore, correct in granting appellees' motion to dismiss for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1).

Appellants' sole assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, P.J., and BLACKMON, J., concur.