JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Reverend Jewell D. Jones, Sr., appeals from a judgment of the Cuyahoga County Court of Common Pleas, granting defendants-appellees' Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction. For the following reasons, we affirm.
 {¶ 2} On April 13, 2006, Jones and plaintiff Shiloh Missionary Baptist Church ("Shiloh Church") filed a complaint for declaratory judgment, preliminary and permanent injunction, and attorney fees, against defendants-appellees Lewis Wilson, Chairman of the Shiloh Missionary Baptist Church Board of Deacons, the Shiloh Missionary Board of Deacons ("the Board"), and Clara Coty.[1]
 {¶ 3} The record reveals that Jones was elected to serve as the pastor of Shiloh Church on November 9, 1992. In Spring 2006, the Board called a special *Page 3 
meeting to evaluate Jones and determine if he should remain as the pastor. Over a two-thirds majority of the eligible members present at the meeting voted to terminate Jones' pastorship. Seventy-seven members voted to terminate Jones, and only thirty voted to retain him. Jones maintains that the Board did not follow its procedural rules set forth in Article XI, Section 4, of the Shiloh Constitution, requiring a quorum of one hundred fifty members.
 {¶ 4} Article XI, Section 4, "Termination of Pastor," provides in relevant part:
 {¶ 5} "Termination of the office shall be voted on at a regularly called business meeting, notice of such meeting and its purpose having been read from the pulpit and published in the Church bulletin on four (4) successive Sundays. A vote of two-thirds of the members present and qualified to vote, provided there be present and voting one-hundred fifty (150) or more members, shall make valid the termination of said office."
 {¶ 6} Article VII, Section Two, "Quorum," states:
 {¶ 7} "Quorum for transaction of official business will be seventy-five (75) members in good standing. A majority of such members present and voting at any regular or properly called business meeting shall be sufficient to vote on any question presented, except for the call of, or action upon the resignation of the Pastor, or the selling or transfer of property of the Church, or purchase of property in the name of the Church — in such a quorum will be one hundred and fifty (150) qualified voters with two-thirds majority." *Page 4 
 {¶ 8} And Article XIV, the "Rules of Order," set forth the following:
 {¶ 9} "The Parliamentary procedures of this Church shall be governed by Robert's Rules of Order in all cases, except where it is inconsistent with the New Testament, this Constitution and Hiscox's New Directory for Baptist Churches."
 {¶ 10} After hearing evidence to determine whether the court had subject matter jurisdiction, the trial court found that "there is a conflict between Robert's Rules and the Hiscox Directory." The court further noted that although Robert's Rules is secular and thus, the court could interpret it, the Hiscox Directory is "an overtly religious work." The court concluded that it could not "venture" into the interpretation of a religious work and dismissed the case.
 {¶ 11} It is from this judgment that Jones appeals, raising the following two assignments of error:
 {¶ 12} "[1.] Whether the trial court erred in granting appellee's motion to dismiss appellant's declaratory judgment action for lack of subject matter jurisdiction[.]
 {¶ 13} "[2.] Whether the trial court erred when it permitted the appellee to present evidence of past practices of the Shiloh Missionary Baptist Church when it conducted a hearing on the narrow question of whether proper procedure was followed with respect to the termination of Reverend Jones in accordance with Article 11, Section 4 of the church constitution[.]" *Page 5 
 {¶ 14} In his first assignment of error, Jones argues that the trial court erred when it dismissed the case for lack of subject matter jurisdiction. We disagree.
 {¶ 15} "In determining whether a plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, a trial court is not confined to the allegations of the complaint, and it may consider evidentiary material pertinent to such inquiry without converting the motion to a motion for summary judgment." Tibbs v. Kendhck (1994),93 Ohio App.3d 35, 39, citing Southgate Dev. Corp. v. Columbia Gas Transm. Corp.
(1976), 48 Ohio St.2d 211. Thus, a trial court may dismiss a complaint for lack of jurisdiction over subject matter on the basis of (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Tibbs at 40, citingJenkins v. Eberhart (1991), 71 Ohio App.3d 351, 355.
 {¶ 16} A court reviewing an appeal of a dismissal for lack of subject matter jurisdiction under Civ.R. 12(B)(1) reviews the matter de novo.Newell v. TRW, Inc. (2001), 145 Ohio App.3d 198, 200. Therefore, this court must determine whether Jones alleged a cause of action which the trial court had the authority to decide, without deference to the trial court's decision.
 {¶ 17} In Tibbs, this court set forth the following:
 {¶ 18} "It is well established that civil courts lack jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of a church or religious *Page 6 
organization. Watson v. Jones (1871), 80 U.S. (13 Wall.) 679;Presbyterian Church v. Hull Church (1969), 393 U.S. 440; Serbian E.Orthodox Diocese v. Milivojevich (1976), 426 U.S. 696. Both HullChurch and Milivojevich quote with approval the following passage fromWatson:
 {¶ 19} "`In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe [on] personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. * * * All who unite themselves to such a body [the general church] do so with an implied consent to [its] government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.' 80 U.S. (13
Wall.) at 728-729." Tibbs at 40-41.
 {¶ 20} In resolving disputes regarding "who should preach from the pulpit," a civil court must follow a two-step analysis in determining whether it has subject matter jurisdiction over the controversy. Id. at 42. First, the court must determine whether the church is a hierarchical or congregational church. Hierarchical church *Page 7 
structure exists when the church has a superior ecclesiastical tribunal which has ultimate control and power over the whole membership, and courts generally lack jurisdiction to hear the dispute. Congregational church structure exists when a church is completely independent of any other ecclesiastical association, and courts retain jurisdiction to determine if the decision "who shall preach from the pulpit" was made by the proper church authority. Id. at 41-42.
 {¶ 21} Next, the court must consider whether the controversies presented by the case involve ecclesiastical or secular issues. Since it is undisputed in the present case that the Shiloh Church is congregational, this court must only determine if the issues involve ecclesiastical or secular issues. Where a dispute involves non-doctrinal contractual disputes, a civil court retains jurisdiction. Id. at 42. If, however, the court has to inquire into church doctrine, and go beyond completely neutral principles, then the court does not have jurisdiction to hear the dispute. Salzgaber v. First Christian Church (1989),65 Ohio App.3d 368, 372.
 {¶ 22} Jones argues that this is not a "who should preach from the pulpit" matter and thus, the trial court did not have to involve itself in ecclesiastical matters. He contends that the court simply had to ensure that "the Church followed its own rules which it freely enacted." Specifically, Jones maintains "the entire controversy centers around whether the 150 person quorum rule could be suspended and a vote on terminating the Pastor held." *Page 8 
 {¶ 23} At the spring 2006 meeting, it was determined that one hundred seven eligible voting members were present. A motion was made to suspend the quorum rules requiring one hundred fifty members in good standing. A member raised the question if it was proper to suspend the quorum rules under the Shiloh Constitution. Wilson told the member questioning the legality of the suspension that it was permitted under Robert's Rules.
 {¶ 24} At the evidentiary hearing, Wilson explained that Robert's Rules govern the expediency of a meeting and the Hiscox Guide gives the foundation for the church. Specifically, Robert's Rules helps "execute what Hiscox is saying[.]" Wilson testified that the Hiscox Guide superceded Robert's Rules. And under the Hiscox Guide, which Wilson read from, "[a] rule of order may be suspended by a vote of the body to all the transaction of business necessary, which could not otherwise be done without a violation of such rule."
 {¶ 25} On cross-examination, Wilson also read from Robert's Rules, which limited an organization's power to suspend the rules of order. It permitted a suspension of normal rules of order, however, only on non-constitutional matters. It stated: "[t]he constitution and bylaws of an organization are not involved because they cannot be suspended under any circumstances."
 {¶ 26} Robert's Rules, a secular work, clearly conflicts with the Hiscox Guide. No one disputes the fact that the Hiscox Guide is a patently religious work. Thus, *Page 9 
the question of whether the Board followed proper procedures in this case is not simply limited to interpreting secular procedural rules. Resolving this dispute would inextricably require an examination of internal church discipline, which is governed by ecclesiastical rule, custom, and law, and which civil courts are prohibited from doing. Therefore, the trial court did not have subject matter jurisdiction to resolve this issue, and did not err when it dismissed the case.
 {¶ 27} Accordingly, Jones' first assignment of error is without merit.
 {¶ 28} In his second assignment of error, Jones argues the trial court erred when it admitted irrelevant evidence of the Board's past practices at the hearing "on the narrow issue of whether proper procedure was followed with respect to the termination of Reverend Jones." We disagree.
 {¶ 29} First, the trial court held several hearings, which were not simply to determine the narrow issue of whether proper procedure was followed. The trial court held the hearings to resolve appellees' motion to dismiss for want of subject matter jurisdiction. There was a dispute as to whether the matter solely involved secular issues, or whether the matter was entangled in spiritual issues. Thus, the trial court heard evidence to resolve this issue.
 {¶ 30} The standard of review for the admission or exclusion of relevant evidence is abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, 180. In order to find an abuse of discretion, we must determine that the trial court's decision *Page 10 
was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 31} At the hearing, Wilson estimated that for the last nine or ten years, "at least 90 percent of the times, we had to suspend the rules, to have a regular church meeting," because seventy-five members (quorum amount for a regular meeting) were not present. With regard to a special meeting, he stated that as recent as May 2002, the Board had to suspend the one hundred fifty member voting requirement when it voted to purchase a piece of property, because only thirty-seven eligible members were present.
 {¶ 32} The trial court admitted this evidence over objection. The trial court did not abuse its discretion in doing so. The evidence was relevant to determine the issue of whether the Board had followed the Hiscox Guide in the past, which assisted the trial court in determining that it had no jurisdiction over the dispute. After hearing the evidence, the trial court aptly concluded that it did not have jurisdiction to resolve the issue since it found itself "standing chest-high in church doctrine."
 {¶ 33} Therefore, Jones' second assignment of error lacks merit.
 {¶ 34} The judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 11 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY JANE BOYLE, JUDGE
ANTHONY O. CALABRESE, JR., P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR
[1] Clara Coty acted as secretary and recorded minutes at the meeting where Jones was terminated. *Page 1