[Cite as *Slavic Full Gospel Church, Inc. v. Vernyuk*, 2012-Ohio-3943.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97158

# SLAVIC FULL GOSPEL CHURCH, INC.

PLAINTIFF-APPELLANT

vs.

# VIKTOR VERNYUK, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-709486

**BEFORE:**    Sweeney, J., Celebrezze, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    August 30, 2012

**ATTORNEYS FOR APPELLANT**

Ronald L. McLaughlin, Esq.
Joseph E. Feighan, III, Esq.
14516 Detroit Avenue
Lakewood, Ohio 44107

**ATTORNEY FOR APPELLEE**

Mark A. Ropchock, Esq.
Roetzel & Andress
222 South Main Street
Akron, Ohio 44308

**APPELLEES**

Viktor Vernyuk, Pro Se
1647 Stony Hill Road
Hinckley, Ohio 44233

Petro Klimchuk, Pro Se
4120 Porter Road
Westlake, Ohio 44145

Oleksiy Puts, Pro Se
3620 Muriel Avenue
Cleveland, Ohio 44109

Stepan Romaso, Pro Se
810 Longridge Drive
Seven Hills, Ohio 44131

Roman Yaremko, Pro Se
2333 Laurel Road
Hinckley, Ohio 44233

Sergiy Yevtushenko, Pro Se
6191 West 29th Street
Parma, Ohio 44134

JAMES J. SWEENEY, J.:

**{¶1}** Plaintiff-appellant, the Slavic Full Gospel Church, Inc. ("the Church"), appeals the court's granting summary judgment to defendants-appellees, seven members and/or officers of the Church ("defendants"). After reviewing the facts of the case and pertinent law, we affirm.

**{¶2}** The Church is an Ohio non-profit corporation, and in 2002, it built a new location in Broadview Heights. A dispute arose among the members, with defendants and approximately half of the congregation defecting and the remaining half siding with the associate pastor. Defendants attempted, via a member vote, to remove the pastor from his position and elect another pastor. However, they did not have a quorum, and the dispute escalated.

**{¶3}** The Church filed a complaint against defendants on November 10, 2009, alleging "interference with operation of church" and requesting an accounting from one of the defendants who was serving as the Church treasurer.

**{¶4}** On December 3, 2010, four days prior to the scheduled trial date, the parties agreed to binding arbitration. On January 7, 2011, the parties entered a revised binding arbitration agreement, which included 22 matters that the arbitration panel was to "interpret and decide" and provided basic guidelines for the arbitration. An arbitration was conducted before a five-member panel, which issued a "decision and recommendations," which was filed with the court on February 9, 2011. Throughout the summer of 2011, both parties filed various motions to stay, modify, and/or confirm this arbitration award.

**{¶5}** On June 13, 2011, the court issued an order regarding an interim pastor, church services, and member voting. On July 15, 2011, the court granted the defendants' summary judgment motion, concluding that it had no subject matter jurisdiction to hear ecclesiastical matters.

**{¶6}** The Church appeals and raises six assignments of error for our review.

**{¶7}** I. "The trial court erred in granting defendants' motion for summary judgment for lack of subject matter jurisdiction."

**{¶8}** II. "The trial court erred in failing to rule on/grant plaintiff's motion for partial summary judgment."

**{¶9}** III. "The trial court erred in failing to rule on plaintiff's motion for leave to file second amended complaint."

**{¶10}** IV. "The trial court erred in failing to follow the recommendation of the chairman of the arbitration panel to appoint a receiver and order the dissolution of the corporation and an equitable distribution of the assets between two different, irreconcilable church factions."

**{¶11}** V. "The trial court erred in issuing directives establishing a membership list, directing a referendum, requiring joint services, directing elections for interim pastor and general elections, and in incorporating the results of some of those directives in its judgment entry while dismissing the case for lack of subject matter jurisdiction."

**{¶12}** VI. "The trial court erred in failing to rule on plaintiff's motion to partially confirm award of arbitration."

{¶13}   Upon review, we find the Church's first assignment of error dispositive of the appeal.

{¶14}   Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).   The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274 (1996).

{¶15}   Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶16} Generally, civil courts lack jurisdiction to hear ecclesiastical disputes within a church, although courts may hear church disputes that are secular in nature.   *Watson v. Jones*, 80 U.S. 679, 20 L.Ed. 666 (1872); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).   "Generally, the question of who

will preach from the pulpit of a church is an ecclesiastical question, review of which by the civil courts is limited by the First and Fourteenth Amendments to the United States Constitution." *Tibbs v. Kendrick,* 93 Ohio App.3d 35, 41, 637 N.E.2d 397 (8th Dist.1994). As evidenced by the Bill of Rights, our Founding Fathers "reached the conviction that individual religious liberty could be achieved best under a government which was stripped of all power to tax, to support, or otherwise to assist any or all religions, or to interfere with the beliefs of any religious individual or group." *Everson v. Bd. of Edn.*, 330 U.S. 1, 11, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

{¶17} In determining whether courts have jurisdiction over church disputes, we apply a two-tiered analysis. First, courts must look at whether the church is hierarchical or congregational. "If the church is hierarchical, civil courts generally lack jurisdiction to hear the dispute." *Tibbs* at 42. However, if the church is congregational, a civil court has jurisdiction only to determine the narrow issue of whether the decision concerning the ecclesiastical dispute was made by the proper church authority. *Id.* In the instant case, it is undisputed that the Church is congregational.

{¶18} Second, we turn to whether the nature of the dispute was ecclesiastical or secular.

> In order for this court to determine whether the lower court has subject matter jurisdiction over the controversies presented by the case sub judice, this court must review appellants' complaint to determine whether the controversies presented in each count require determination of ecclesiastical or secular issues.

*Id.* at 43.

{¶19} Count 1 of the Church's amended complaint is captioned "Complain[t] to Enjoin Interference with Operation of Church."  In this cause of action, the Church alleges that on June 26, 2007, a new membership policy was enacted.  Defendants did not follow this membership policy and have "caused disorder and disruption in the Church."  The dispute escalated over the next two years, and by November 2009, defendants had conducted their own Church meetings and elections and claimed the right to enter into contracts and control bank accounts on behalf of the Church, allegedly in violation of the Church charter.

{¶20}  Count 2 of the complaint is captioned "Complaint for Ejectment and for Damages."  In this cause of action, the Church states that "Defendants have demonstrated that they are attempting to execute a hostile takeover of the [C]hurch leadership and administration, [and] attempt[ing] to establish policy and assert control over the Church property, * * * in violation of law and the charter of the Church."

{¶21}  The first two counts of the Church's amended complaint allege that defendants "defected" from the Church and essentially ask the court to interpret the Church's charter and determine who is a proper member.  In granting summary judgment to defendants, the court in the instant case stated the following:

> The basis of this entire lawsuit surround[s] alleged "unchristian like behaviors" of all of the parties and the impact of this behavior on Church policy and administration.  This court finds that it is without jurisdiction to establish Church policy or eject defendants from the Church membership as both would require this court to inquire into ecclesiastical matters.

**{¶22}** Religious freedom is embedded in the First Amendment to our Constitution, and

> it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.

*Watson v. Jones*, 80 U.S. 679, 729 (1872).

**{¶23}** The Church's first two causes of action are clearly ecclesiastical in nature, and as a matter of law, the court lacked jurisdiction to hear these claims. Although the better practice may have been to dismiss the claims, we find that summary judgment was appropriate as it pertains to these two causes of action. *See St. Paul Fire & Marine Ins. Co. v. Ohio Bldg. & Assoc.*, 6th Dist. No. L-88-337, 1989 Ohio App. LEXIS 4860, (Dec. 29, 1989) ("While a motion for summary judgment may not be the best or technically proper methdol of raising lack of subject matter jurisdiction, it is clear that a court has the duty to dismiss a cause when this issue is brought to its attention. Therefore, if the trial court correctly determined that it lacked subject matter jurisdiction, the use of a summary judgment motion to dismiss was harmless error").

**{¶24}** Count three, which is the Church's final cause of action, is a complaint for an accounting. In *Dunn v. Zimmerman*, 69 Ohio St.3d 304, 307, 631 N.E.2d 1040 (1994), the Ohio Supreme Court recognized that a formal accounting is an "appropriate" remedy in an action for breach of fiduciary duty.

A party seeking an accounting must introduce sufficient evidence to enable the court to make a definitive accounting that states the "true condition of [the] affairs" between the partners. In the absence of sufficient proof, the court must leave the parties where they stand. Once the accounting has been conducted, the trial court may enforce the collection of any amounts found owing. The trial court's award may include punitive damages in the appropriate circumstances. (Internal citations omitted.)

*Id.*

{¶25} The Church's complaint for an accounting alleges that in 2002, one of the defendants was the Church treasurer, "and in that fiduciary capacity collected and disbursed various sums of money from or [to] members, attenders, vendors and creditors of the Church." The Church claims that its repeated requests for an accounting of "receipts and disbursements" remain unanswered.

{¶26} Although an accounting is secular in nature, our inquiry in the instant case does not end here. We must review the record to determine if the Church introduced sufficient evidence to overcome summary judgment, i.e., if the Church "set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Upon review, we find that the Church failed to allege a breach of fiduciary duty. However, assuming for argument's sake that the Church had alleged a wrongdoing, we find insufficient evidence in the record to overcome defendants' motion for summary judgment.

{¶27} According to the Church, it had access to the treasurer's records in 2002, which consisted of a "drawer full of pieces of paper and receipts, many of them handwritten." An internal audit was allegedly conducted; however, the resulting report is not a part of the record. This report is referred to in the Church's summary judgment motion, and the treasurer's financial practices are questioned, but no cognizable legal

claims are asserted. For example, various "differences with the documentation" are brought to the court's attention regarding the "annual financial report." However, there is no evidence to explain or support these "differences," and the party opposing summary judgment cannot rest on mere allegations. Civ.R. 56(C) and (E).

{¶28} A second example of the Church disagreeing with the treasurer's accounting methods is the claim that the treasurer paid $50,000 cash to T&J Cement for work on the Church property. This transaction is evidenced by a signed paper receipt from T&J Cement. A third example is that the treasurer did not deposit large amounts of cash in the bank; rather, he kept the money in a safe.

{¶29} The Church does not allege, nor do we find, that it is improper to pay for services in cash or to keep money in a safe. Although this cause of action was not dismissed on the pleadings, there is no cognizable claim for an accounting in the record before us. *See* Civ.R. 12(H)(2); *State ex rel. Kreps v. Christiansen*, 88 Ohio St.3d 313, 316, 725 N.E.2d 663 (2000) ("[s]ua sponte dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate if the complaint is frivolous or the claimant obviously cannot prevail on the facts alleged in the complaint").

{¶30} Looking at the evidence in a light most favorable to the Church, we find that there are no material factual disputes that give rise to the need for a legal accounting. Defendants are entitled to judgment as a matter of law on the third cause of action. Summary judgment was proper albeit for a different reason than the court relied on in its journal entry.

**{¶31}** Additionally, in granting summary judgment, the court stated that

this court has finalized the Church membership list identifying the members rightfully entitled to cast a vote as to the ecclesiastical matters left unresolved in this dispute. It is the court's understanding that the members have voted to remain as one Church and have expressed a desire to resume joint services. The members are left to determine all of the logistics for an election[,] to determine a pastor, Church council, and Church board.

**{¶32}** The court lacked jurisdiction to make this determination and this portion of its journal entry is void ab initio. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992.

**{¶33}** We find no error in the court's granting defendants' summary judgment motion, and the Church's first assignment of error is overruled.

**{¶34}** The Church's remaining assignments of error are moot pursuant to App.R. 12(A)(1)(c).

**{¶35}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MARY EILEEN KILBANE, J., CONCUR