[Cite as *Turner v. Tri-County Baptist Church of Cincinnati*, 2018-Ohio-4658.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| BARRY TURNER, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2018-03-050 |
| | : | O P I N I O N |
| - vs - | | 11/19/2018 |
| | : | |
| TRI-COUNTY BAPTIST CHURCH OF CINCINNATI, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2017-10-2343

Barron Pack Bennie & Schlemmer, L.P.A., Peter A. Burr, 3074 Madison Road, Cincinnati, Ohio 45209, for plaintiff-appellant

Gibbs & Associates Law Firm, LLC, David C. Gibbs, Jr., Seth J. Kraus, 5412 Courseview Drive, Suite 122, Mason, Ohio 45040, for defendants-appellees

**HENDRICKSON, J.**

{¶ 1} Plaintiff-appellant, Barry Turner, appeals the judgment of the Butler County Court of Common Pleas, granting defendants-appellees' motion to dismiss for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1).

{¶ 2} Turner is an ordained minister who was employed by defendant-appellee, Tri-

County Baptist Church of Cincinnati ("TCBC") for more than 35 years. TCBC is organized as a non-profit corporation in Ohio and has its principal place of business in Butler County. Defendant-appellee, Brian McManus, is an ordained minister and head pastor at TCBC. McManus became head pastor in 2011. During his tenure as head pastor, McManus asked Turner to retire; however, Turner did not wish to retire. In 2015, McManus placed Turner on a performance improvement plan known as a Performance Growth Initiative. This placement occurred under a threat of immediate termination for any deficiency. Turner was subjected to various forms of harassment for over a year while placed on the Performance Growth Initiative, including verbal abuse and misrepresentations about him.

{¶ 3} McManus ultimately presented Turner with an ultimatum. Turner could either accept a part-time position at a significantly reduced salary or retire. Turner reluctantly accepted the part-time position. McManus misrepresented this choice to church staff as voluntary. During a meeting with church staff, Turner responded negatively to a question regarding whether he voluntarily chose to accept the part-time position. McManus replied, "wrong answer" and informed Turner there would be adverse consequences for not informing the congregation at the Family Meeting that he voluntarily accepted the position. When asked at the congregational Family Meeting if he was presented with the above ultimatum, Turner responded affirmatively. Following the Family Meeting, McManus informed the church deacons that he could no longer work with Turner, effectively ending Turner's ministry, as TCBC placed Turner on administrative leave. On January 31, 2017, TCBC terminated Turner's ministry. During the period of administrative leave, McManus damaged Turner's relationships with TCBC members by describing him as a liar.

{¶ 4} Prior to the termination of his ministry, Turner provided TCBC with 60 days' notice that he would be relinquishing his pastorate. The TCBC Constitution provides that if a pastor provides such written notice of his intent to leave and if, thereafter, the church for any

reason relieves him of his duties, he shall receive two months' salary at his regular rate.

{¶ 5} Turner filed a complaint alleging claims of breach of contract against TCBC, defamation against McManus, and age discrimination against both appellees. TCBC and McManus moved to dismiss the claims pursuant to Civ.R. 12(B)(1) and (6). The trial court dismissed the claims for lack of subject matter jurisdiction.

{¶ 6} On appeal, Turner concedes the trial court lacked jurisdiction over his age discrimination claim, but asserts the trial court erred in dismissing his breach of contract and defamation claims.

{¶ 7} Sole Assignment of Error:

{¶ 8} THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISMISS.

{¶ 9} Turner contends his breach of contract and defamation claims are secular in nature and not inextricably intertwined with ecclesiastical issues; therefore, the trial court erred in dismissing the claims for lack of subject matter jurisdiction.

{¶ 10} Appellees moved to dismiss Turner's complaint pursuant to Civ.R. 12(B)(1) and (6) asserting that the trial court lacked jurisdiction, or in the alternative, Turner failed to state a claim upon which relief could be granted. The trial court granted the motion to dismiss based on Civ.R. 12(B)(1), finding that it lacked subject matter jurisdiction pursuant to the ecclesiastical abstention doctrine.

{¶ 11} We conduct a de novo review of a trial court's decision on a motion to dismiss a complaint for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1). *Bla-Con Indus. v. Miami Univ.*, 12th Dist. Butler No. CA2006-06-127, 2007-Ohio-785, ¶ 7. This review involves a determination of whether the complaint raised any cause of action cognizable by the forum in which it was filed. *Id.*

{¶ 12} It is well-established that civil courts lack jurisdiction to hear or determine

purely ecclesiastical or spiritual disputes of a church or religious organization. *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 40-41 (8th Dist.1994), citing *Watson v. Jones*, 80 U.S. 679, 20 L.Ed. 666 (1871). This is known as the ecclesiastical abstention doctrine. *Harrison v. Bishop*, 6th Dist. Lucas No. L-14-1137, 2015-Ohio-5308, ¶ 19. The doctrine is a recognition that all who unite themselves to such a body, i.e., a church, do so with an implied consent to its government and are bound to submit to it. *Ohio Dist. Council, Inc. v. Speelman*, 12th Dist. Butler No. CA2015-02-031, 2016-Ohio-751, ¶ 19. "It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for." *Id.*

{¶ 13} "Ohio appellate courts have fashioned the ecclesiastical abstention doctrine into a two-part test to determine whether a court has subject matter jurisdiction over a church dispute." *Harrison* at ¶ 41, citing *Bhatti v. Singh*, 148 Ohio App.3d 386, 2002-Ohio-3348, ¶ 25 (12th Dist.). First, the court must determine whether the church is a hierarchical or congregational church. *Tibbs* at 43; S*tate ex rel. Morrow v. Hill*, 51 Ohio St.2d 74 (1977), syllabus ("[t]he issue of whether the local church is a part of a hierarchical church organization is a proper matter for determination by the appropriate court"). If the organization is congregational, then the court determines whether the dispute is ecclesiastical or secular in nature. *Tibbs* at 43. Civil courts lack jurisdiction over the former and maintain jurisdiction in certain circumstances over the latter. *Id.* at 43-44.

{¶ 14} In the present case, it is unclear from the complaint whether TCBC is congregational or hierarchical. Therefore, assuming arguendo that it is congregational, the basis of this appeal concerns whether Turner's claims are purely ecclesiastical or secular in nature.

{¶ 15} "Generally, the question of who will preach from the pulpit of a church is an

ecclesiastical question, review of which by the civil courts is limited by the First and Fourteenth Amendments to the United States Constitution." *Tibbs* at 41, citing *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N.A.*, 344 U.S. 94, 73 S.Ct. 143 (1952). For questions regarding "who should preach from the pulpit," the *Tibbs* court distinguished situations where "inextricably entangled in the dispute is whether the [minister's] performance of his duties as a [minister] met the requirement of his church as measured by ecclesiastical concerns" versus secular nondoctrinal contractual disputes. *Tibbs* at 42. For an appellate court to determine whether a trial court has subject matter jurisdiction over the controversies presented, it must review the individual causes of action in the complaint. *Id.* at 43.

{¶ 16} Before analyzing Turner's specific causes of action, we note he argues the trial court was obligated to hear and resolve both claims because his claims involve neutral principles of law. However, the "neutral principles" exception to the ecclesiastical abstention doctrine "applies only to cases involving disputes over church property." *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir.1986), discussing *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020 (1979). "The 'neutral principles' doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be." *Id.* (distinguishing property disputes and claims related to a minister's employment). Therefore, the "neutral principles" exception is inapplicable to the facts of this case.

{¶ 17} Turner's first cause of action is a breach of contract claim against TCBC. Turner asserts that TCBC relieved him of his ministerial duties, then failed to pay him for two months' salary and his unused vacation time. Turner cites a portion of TCBC's Constitution, which provides that:

> The pastor, after prayerful consideration, shall give the church sixty (60) days written notice of his decision to relinquish the pastorate, and, if after prayerful consideration, the church for any reason relieves him of his duties, he shall receive two (2) months' salary at his regular rate.

Based on the foregoing, Turner contends his breach of contract claim does not involve any ecclesiastical considerations. Rather, the question is secular because it is restricted to whether the language of his employment contract provides for compensation after his termination.

{¶ 18} After reviewing Turner's first cause of action, we find Turner's breach of contract claim is inextricably entangled with ecclesiastical concerns. While Turner's claim is not one of wrongful termination, a plain reading of the cited portion of TCBC's Constitution clearly identifies that the provision providing the basis for Turner's breach of contract claim invokes ecclesiastical concerns. *See, e.g.*, *Hutchison* at 396 (dismissing complaint with breach of contract and defamation claims because the claims "concern[ed] church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law"). The procedure for providing notice of a pastor's decision to relinquish the pastorate clearly indicates spiritual considerations; therefore, the trial court correctly found it lacked subject matter jurisdiction over the claim pursuant to the ecclesiastical abstention doctrine.

{¶ 19} Turner's second cause of action is a defamation claim against McManus. Turner's complaint asserts McManus made "assertions of fact about * * * Turner that injured him in his reputation and his calling." Turner contends his defamation claim is secular in nature because it does not require an examination of any ecclesiastical issues. However, contrary to Turner's claim, an inquiry by a civil court into the truth or falsity of the alleged defamatory statements would require a review of subjective judgments made by church personnel. The alleged defamatory statements concern Turner's reputation and his calling and were made during church meetings. Therefore, the basis for Turner's defamation claim is clearly ecclesiastical in nature and outside the subject matter jurisdiction of a civil court. *See, e.g.*, *Howard v. Covenant Apostolic Church*, 124 Ohio App.3d 24, 30 (1st Dist.1997); *Salzgaber v. First Christian Church*, 65 Ohio App.3d 368, 373 (4th Dist.1989); *Yaggie v.*

*Indiana-Kentucky Synod Evangelical Lutheran Church in Am.*, 860 F.Supp. 1194, 1199 (W.D.Ky.1994).

{¶ 20} Accordingly, the trial court did not err in finding it lacked subject matter jurisdiction pursuant to the ecclesiastical abstention doctrine. Turner's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

S. POWELL, P.J., concurs.

RINGLAND, J., dissents.

**RINGLAND, J., dissenting.**

{¶ 21} I respectfully dissent from the majority's decision in resolution of Turner's assignment of error. This court conducts a de novo review of a decision dismissing a complaint for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1). *McKenzie v. Meijer, Inc.*, 12th Dist. Clermont No. CA2016-09-061, 2017-Ohio-1495, ¶ 10. This review involves a determination of whether the complaint raised any cause of action cognizable by the forum in which it was filed. *Id.*

{¶ 22} The majority opinion broadly defines the ecclesiastical abstention doctrine in a manner that oversteps the original intent of the doctrine. Turner's first cause of action for breach of contract states a cognizable, secular claim. In relevant part,

> The pastor, after prayerful consideration, shall give the church sixty (60) days written notice of his decision to relinquish the pastorate, and, if after prayerful consideration, the church for any reason relieves him of his duties, he shall receive two (2) months' salary at his regular rate.

{¶ 23} This provision does not implicate "spiritual considerations," but merely authorizes a severance payment in the event the church "*for any reason relieves him of his duties.*" (Emphasis added.) This court need not reach any decision as to ecclesiastical

concerns regarding church discipline, faith, or organization. Instead, whether Turner is entitled to payment may be resolved by determining whether the conditions precedent were satisfied in the above-referenced provision.

{¶ 24} Turner's second cause of action for defamation also should not have been dismissed as lacking subject matter jurisdiction, as that determination is premature based on the factual allegations contained in the complaint. This court should not presume that the purported false statements concerned matters of ecclesiastic concern. As a result, with regard and respect for my colleagues in the majority, I must respectfully dissent.